MORSE v. EQUITABLE LIFE ASSUR. SOCIETY OF UNITED STATES
et al.

(Supreme Court, Appellate Division, First Department. February 14, 1908.)

1. WORDS AND PHRASES—"INVEST."

Invest, as used in connection with money or capital, means to give money for some other property; to lay out money for some other kind of property, usually of a permanent nature, literally, to clothe money in some thing; to lay out money in some permanent form so as to produce an income; to lay out money or capital in business with the view of obtaining an income or profit; to place money so that it will yield a profit.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 4, pp. 3755–3758.]

2. INSURANCE—INVESTMENTS BY LIFE INSURANCE COMPANIES.

The carrying out of a proposed merger agreement by which stockholders may surrender their shares and receive in exchange therefor the shares of the merged company, so far as such merger affects a life insurance company owning shares in the constituent companies upon expenditures of money, made when not prohibited by law, does not offend against the provisions of Insurance Law, § 100, as amended by Laws 1906, p. 797, c. 326, providing that life insurance companies shall not invest in any shares of the stock of any corporation other than a municipal corporation.

3. CORPORATIONS—CONSOLIDATION—RIGHTS OF STOCKHOLDERS.

A stockholder cannot enjoin the execution of a proposed merger agreement between corporations which is intra vires, unless fraud or oppression or unfairness is shown.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 2346.]

Appeal from Special Term.

Action by Charles W. Morse, a stockholder of the Equitable Life Assurance Society of the United States, on his own behalf and on behalf of other stockholders, against said Equitable Life Assurance Society of the United States and others. From an order granting an injunction during the pendency of the action, defendants appeal. Reversed.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Charles F. Brown (Paul D. Cravath, Allan McCulloh, Carl A. De Gersdorff, on the brief), for appellants.

Louis Marshall (Thomas D. Adams, on the brief), for respondent.

CLARKE, J. This is an appeal from an order granting an injunction pendente lite in an action in equity brought to enjoin and restrain the Equitable Life Assurance Society of the United States, its directors, officers, agents, and attorneys, from voting at any meeting of the stockholders of the defendant the Equitable Trust Company of New York, or of the defendant the Mercantile Trust Company, in favor of approving an agreement of merger, dated June 13, 1907, between said trust companies; from exchanging the capital stock of the Equitable Trust Company held by the insurance company for shares of stock of the Mercantile Trust Company; and restraining the said trust companies, and their, and each of their, directors, officers,

agents, and attorneys, from carrying out the aforesaid agreement of merger. The said merger agreement and the questions arising thereunder have been considered in Colby v. Equitable Trust Company (handed down herewith) 108 N. Y. Supp. 978, and no further consideration of the questions there passed upon is necessary in this opinion. We therefore consider solely the questions peculiar to this case.

The capital stock of the Equitable Life Assurance Society is $100,-000, divided into 1,000 shares of the par value of $100 each, the annual dividends thereon being limited by law to 7 per cent. The plaintiff owns 15 shares of said capital stock. The charter of the society provides that the earnings and receipts over and above the dividends, losses, and expenses shall be accumulated, and that the insurance business of the company shall be conducted upon the mutual plan. The assets of the company in excess of its capital stock, according to its last report, amounts to upwards of $434,000,000, of which $68,720,333 is surplus. A majority of its directors are elected by policy holders, and not by the stockholders. The insurance company owns 14,500 shares of the capital stock of the defendant Equitable Trust Company, being 67 per cent. thereof, and 12,941 shares of the capital stock of the Mercantile Trust Company, being about 49 per cent. thereof. One of the grounds upon which the injunction was prayed is that the Equitable Life Assurance Society has no right, under section 100 of the insurance law of the state of New York, amended by chapter 326, p. 797, Laws 1906, to exchange its stock in the Equitable Trust Company of New York for stock of the merged company under the merger agreement. Said section provides as follows:

"Investments. No domestic life insurance corporation, whether incorporated by special act or under a general law, shall after the first day of June, 1906, invest in or loan upon any shares of stock of any corporation, other than a municipal corporation, nor, excepting government, state or municipal securities, shall it invest in, or loan upon, any bonds or obligations which shall not be secured by adequate collateral security or where more than one-third of the total value of the collateral security therefor shall consist of shares of stock. Every such corporation which on the first day of June, 1906, shall own any shares of stock other than public stocks of municipal corporations, whenever the same shall have been acquired, or any bonds or obligations of the kinds above described where said bonds or obligations shall have been acquired after the first day of March, 1906, shall dispose of the said shares of stock and of said bonds and obligations within five years from the thirty-first day of December, 1906, and in each year prior to the expiration of said five years shall make such reduction of its holdings of said securities as may be approved in writing by the superintendent of insurance. No investment or loan shall be made by any such life insurance corporation unless the same shall first have been authorized by the board of directors or by a committee thereof charged with the duty of supervising such investment or loan. No such corporation shall subscribe to or participate in any underwriting of the purchase or sale of securities or property, or enter into any transaction for such purchase or sale on account of said corporation jointly with any other person, firm or corporation; nor shall any such corporation enter into any agreement to withhold from sale any of its property, but the disposition of its property shall be at all times within the control of its board of directors. Any such corporation, in addition to other investments allowed by law, may invest any of its funds in any duly authorized bonds or evidences of debt of any city, county, town, village, school district, municipality or other civil division of any state, and may loan upon the security of improved un-

encumbered real property in any state worth fifty per centum more than the amount loaned thereon."

The insurance company has now a considerable amount of money invested in certain shares of the capital stock of the Equitable Trust Company and the Mercantile Trust Company. It is provided by the terms of the proposed merger that the holders of the capital stock of the Equitable Trust Company shall surrender their stock by delivering the certificates therefor, duly indorsed in blank for transfer, and each stockholder shall be entitled to receive at his option either one share of the capital stock of the merged company for each two shares of the stock of the Equitable Trust Company so surrendered, or $435 in cash for each share so surrendered; that the holders of the present outstanding capital stock of the Mercantile Trust Company shall be entitled to retain one share in the merged company for each share of such present stock, and to receive new certificates therefor upon surrender to the merged company of the present certificates for cancellation. If the insurance company surrenders its shares of the Equitable Trust Company stock at the ratio of two to one, and receives shares of the merged company therefor, and surrenders its shares in the Mercantile Trust Company and receives share for share therefor of the merged company, will that transaction violate the provision of the statute cited, supra, that "no domestic life insurance corporation shall invest in any shares of stock of any corporation other than a municipal corporation"? It is, of course, conceded if this were an original transaction, if the insurance company should agree to buy and pay for out of its funds shares of stock in the merged corporation to be formed by this agreement, that it would violate the provisions of the statute in fact and in intent. The insurance company owns, however, upon expenditures of money heretofore made, when not prohibited by law, shares of stock in the two constituent companies. It has the right, under the statute, to continue to hold such shares as were acquired prior to the 1st of June, 1906, for five years from the 1st day of December, 1906, subject only to the requirement that it shall make in each year of said five years such reduction of its holdings of said securities as may be approved in writing by the superintendent of insurance. During that period its ownership of said stock is perfect. Its title is as good, its privileges, responsibilities, and duties the same as that of any other holder of shares in said companies. It has the right to vote upon its shares in every election and upon every proposition lawfully submitted to the stockholders of the said companies, including the right to vote upon a proposition for merger, required by law to be submitted by the directors to the stockholders, and which can only be accomplished by the consent of the holders of two-thirds of said stock. So long as it is the owner, it is vested with all the rights of ownership. The Century Dictionary defines the word "invest" as follows:

"To employ for some profitable use; convert into some other form of wealth, usually of a more or less permanent nature, as in the purchase of property or shares, or in loans secured by mortgages, etc.; said of money or capital;

followed by in; as, to invest one's means in lands or houses or in bank stock, government bonds, etc.; to invest large sums in books."

"Investment" in the same dictionary is defined:

"An investing of money or capital; expenditure for profits or future benefits; a placing or conversion of capital in a way intended to secure income or profit from its employment; as, an investment in active business, or in stocks, land, or the like; to make safe investment of one's principal."

In 23 Cyc. 348, "invest" is defined as follows:

"As used in connection with money or capital, to give money for some other property; to lay out money for some other kind of property, usually of a permanent nature; literally, to clothe money in some thing; to lay out money in some permanent form so as to produce an income; to lay out money or capital in business with the view of obtaining an income or profit; to place money so that it will yield a profit."

Under this proposed merger no money is to be paid out or clothed in securities or transferred from cash to stock. The investment has long since been made; the money has long since been "placed so that it will yield a profit," "given for some other property," "laid out in a permanent form so as to produce an income." There is to be a mere exchange of shares of stock in two separate companies for shares of stock in one company which is to be the result of the merging of the two separate companies, the merged company to take over and carry on the powers, rights, and privileges of the two separate companies. Instead of the laying out of capital, the parting with money for a security, there will be a considerable transformation of securities into cash by that provision which permits the company to receive $435 per share for those shares of the Equitable Trust Company which it does not desire to exchange for shares in the merged company at the ratio provided. The president of the insurance company states under oath:

"I know of no way by which the society can realize as much upon its holdings as by availing itself of the proposed merger, which insures a cash price of $435 for each share of stock which is not exchanged for stock of the merged company. In my judgment that price is considerably in excess of the probable liquidation value of the stock. * * * If for any reason the proposed merger should prove impracticable, my own judgment, as representing the Equitable Life Assurance Society, would be in favor of liquidating the Equitable Trust Company so as to return to its stockholders its capital and surplus, less the expense of liquidation."

It seems to me clear that the proposed transaction, so far as it affects the Equitable Life Assurance Society, does not offend against the provisions of section 100 of the insurance law, as amended by chapter 326, p. 797, Laws 1906. If I am right, the proposed action of the directors in voting the shares owned by the insurance company is not ultra vires; and, as the learned court at Special Term in the Colby Case distinctly held that the scheme of merger was not fraudulent, this case falls within the doctrine that a stockholder cannot enjoin the execution of a contract intra vires unless fraud or oppression or unfairness is shown. As laid down in Leslie v. Lorillard, 110 N. Y. 532, 18 N. E. 365, 1 L. R. A. 456:

"In actions by stockholders which assail the acts of their directors or trustees courts will not interfere unless the powers have been illegally or un-

conscientiously executed, or unless it be made to appear that the acts were fraudulent or collusive and destructive of the rights of the stockholders."

Where we consider the nature and character, the assets, surplus and capital stock of this insurance company, it is difficult to perceive in what possible way the proposed merger can be destructive of the rights of this plaintiff who owns 15 shares of its stock upon which the dividends are limited by law to 7 per cent. per annum.

For these reasons, in addition to those expressed in the opinion in the Colby Case, the order appealed from should be reversed and the injunction vacated, with costs and disbursements to the appellants. All concur.

---

### McCARDELL v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, Second Department. February 28, 1908.)

DISMISSAL—WANT OF PROSECUTION.

A personal injury case, after issue joined, was not noticed for trial by plaintiff, nor was note of issue filed, but remained in the office of plaintiff's attorney for between four and five years. Issues three years younger were reached and disposed of. Plaintiff's attorney offered as an excuse that the case was in full charge of a clerk in his office, who left after its commencement without informing him of it, and that he never knew of its pendency until service of papers on motion to dismiss for lack of prosecution. *Held*, that there was inexcusable neglect, warranting a dismissal for lack of prosecution.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Dismissal and Nonsuit, §§ 140–152.]

Rich, J., dissenting.

Appeal from Special Term, Westchester County.