## FEDERAL TRADE COMMISSION·*v.* CURTIS PUBLISHING COMPANY.

No. 86. Argued·November 17, 1922.—Decided January 8, 1923.

1. In a proceeding taken by the Federal Trade Commission, under the Federal Trade Commission Act· and the Clayton Act, the ultimate determination of what constitutes unfair competition under the former, is for the court, upon review of the Commission's order; and the same rule applies where the charge is that sales or agreements substantially lessen competition or tend to create monopoly, in violation of the Clayton Act. P. 579.

2. Upon such a review, the Commission's findings of fact are conclusive, if supported by evidence; but the court may examine the whole record and ascertain for itself whether there are material facts not reported by the Commission; and if there be substantial evidence relating to such facts from which different conclusions reasonably may be drawn, and the interests of justice clearly require that the controversy be decided without further delay, the court has full power under the statute to do so without referring the matter to the Commission for additional findings. P. 580.

3. A contract between a publisher and a distributer, as agent, whereby the former undertakes to consign its publications to the latter, retaining title until they are sold, and the latter agrees: to supply the demand of distributers and dealers at specified prices; to promote sales; not to anticipate the dates fixed for publication, or dispose of copies in territory of other agents, or act as agent for, or supply at wholesale rates, periodicals of other publishers, or furnish names and addresses of customers to other publishers or agents, without the former's consent; and to train boys as distributers, subject to the principal's directions, and to return unsold copies, their cover pages or headings,—is not, without more, a contract of sale upon condition within the Clayton Act, but is a contract of agency. P. 581.

4. Engagement by a publisher of numerous agents for the distribution of its magazines exclusively, when done in the orderly development of the business and without unlawful motive, *held* not an unfair method of competition, within the Federal Trade Commis-

sion Act, although many of the agents, when so engaged, were general distributers of newspapers and magazines.   P. 582.

270 Fed. 881, affirmed.

CERTIORARI to a decree of the Circuit Court of Appeals which set aside an order entered against the respondent by the Federal Trade Commission.

*Mr. Solicitor General Beck,* with whom *Mr. W. H. Fuller* and *Mr. Adrien F. Busick* were on the briefs, for petitioner.

It was the manifest purpose of Congress to make the Commission the judge of the weight of the evidence and to make its findings conclusive upon the court if there was any legal evidence in the record to support them. *Wholesale Grocers Assn.* v. *Federal Trade Commission,* 277 Fed. 657; *National Harness Manufacturers' Assn.* v. *Federal Trade Commission,* 261 Fed. 170.

It has been generally held by this Court that where a statute makes the findings of fact by an administrative body conclusive if supported by evidence, the administrative body is the judge of the weight and effect of the evidence. *Interstate Commerce Commission* v. *Louisville & Nashville R. R. Co.,* 227 U. S. 88.   The right asserted by the court below to make additional findings deprives the Commission of its statutory authority to pass upon the weight and effect of the evidence.   Manifestly, the court and the Commission may differ on these points, and the finding by the court, therefore, be contrary to a finding by the Commission.   The court should have remanded the case to the Commission with instructions to find the additional facts.   This Court has consistently held this to be the proper practice in cases arising under the Commerce Act.   *Louisville & Nashville R. R. Co.* v. *Behlmer,* 175 U. S. 648; *Interstate Commerce Commission* v. *Clyde S. S. Co.,* 181 U. S. 29; *Interstate Commerce Commission* v. *Chicago, Burlington & Quincy R. R. Co.,* 186 U. S. 320.

The findings made by the court are contrary to those made by the Commission, and in part contrary to the evidence.

Both contracts of the respondent company are contracts of sale.

Whether the second contract is one of agency or of sale must be determined from the surrounding circumstances. Merely styling it an agency contract and the parties principal and agent is not controlling. *Dr. Miles Medical Co. v. Park & Sons Co.,* 164 Fed. 803; *Poirier Mfg. Co. v. Kitts,* 18 N. Dak. 556; *American Seeding Machine Co. v. Stearns,* 109 App. Div. 192; *Henry Bill Pub. Co. v. Durgin,* 101 Mich. 458. Nor will the mere inclusion in the contract of a clause reserving the title in the seller make the contract one of agency or consignment. A contract containing such a reservation may, nevertheless, be one of absolute or of conditional sale. *Re Carpenter,* 125 Fed. 831; *Sutton v. Baker,* 91 Minn. 12; *Poirier Mfg. Co. v. Kitts,* 18 N. Dak. 556; *Arbuckle Bros. v. Gates,* 95 Va. 802.

If the transaction constitutes a conditional sale, it is within the terms of § 3 of the Clayton Act, which covers " a sale or contract for sale " on condition that the purchaser shall not deal in the goods of a competitor or competitors of the seller. There is ample authority to hold that there is here at least a conditional sale, title to pass to the dealers upon resale of the publications. *Chickering v. Bastress,* 130 Ill. 206; *Granite Roofing Co. v. Casler,* 82 Mich. 466; *Blow v. Spear,* 43 Mo. 496; *Lemp v. Ryus,* 7 Colo. App. 37; *House v. Beak,* 141 Ill. 290; *In re Morris,* 156 Fed. 597; *Re Carpenter,* 125 Fed. 831; *Re Wells,* 140 Fed. 752; *Re Rose,* 206 Fed. 991.

A particular feature of the contract which unmistakably stamps it as a contract of sale is found in a clause in which the dealer guarantees to sell a specified number of the respondent's magazines. Under another he is required to

deposit money with the respondent, which is held by the latter to insure the faithful performance by the dealer of his obligations and guarantees. The only guarantee which the dealer makes is to sell a specified number of the respondent's publications. If he fails his deposit is liable for the price of those unsold. See *Straus* v. *Victor Talking Machine Co.*, 243 U. S. 490, 498.

The real character of the transaction as a sale is unmistakably stamped by the circumstances under which the contracts were made. The first contracts were clearly contracts of sale. When the validity of these contracts was questioned and when the District Court practically held them to be contracts of sale, the respondent sought, by merely changing the form of the contract, to disguise its purpose and to retain all the benefits of the old contract, including the exclusion of real competitors from the wholesale channels of distribution, and yet by such change of form to escape the prohibitions of the Clayton Act. The real relation of the parties remains the same under the new contract. The character of the business of the dealers is still that of independent traders, buying and selling for their own account—not as commission men or factors. As such independent dealers they still constitute, in all instances, a valuable channel of distribution for publishers of newspapers and magazines; in many instances they are the only, and in others the most important, wholesale outlet for such publishers. *Park* v. *Hartman,* 153 Fed. 24.

Respondent's sales are made upon the condition that the dealer shall not deal in the publications of competitors.

The effect of the respondent's sales and contracts for sale is to substantially lessen competition. *Standard Fashion Co.* v. *Magrane-Houston Co.*, 258 U. S. 346; *United States* v. *United Shoe Machinery Co.*, 264 Fed. 138, 168; *United States* v. *Keystone Watch Case Co.*, 218 Fed. 502.

Respondent's contracts constitute an unfair method of competition. The effect of the contracts to substantially lessen competition is identical, whether in form they be contracts of agency or contracts of sale. This Court has held in *Federal Trade Commission* v. *Gratz*, 253 U. S. 421, and more recently in *Federal Trade Commission* v. *Beech-Nut Packing Co.*, 257 U. S. 441, that the prohibition against the use of unfair methods of competition extends to all practices contrary to public policy "because of their dangerous tendency unduly to hinder competition or create a monopoly."

In these two decisions, and in *Federal Trade Commission* v. *Winsted Hosiery Co.*, 258 U. S. 483, this Court holds that the language of the Trade Commission Act is sufficiently inclusive to reach all acts or practices which have the prohibited effect of unduly hindering or suppressing competition.

Where the results prohibited by § 3 are accomplished through contracts which are in form contracts of agency, but where the surrounding facts disclose that the so-called agents are in fact wholesale independent traders, and the real purpose of the contracts is to exclude competitors from the usual channels of distribution, this Court will apply the provisions of the Trade Commission Act and declare the use of the contracts to be an unfair method of competition. *Dr. Miles Medical Co.* v. *Park & Sons Co.*, 164 Fed. 803.

While under the decisions of this Court the prohibition against unfair methods of competition may include a case of unfair trading at common law, since such methods of competition are contrary to good morals because characterized by fraud, it also includes those practices which are in no wise characterized by fraud but which have a dangerous tendency unduly to hinder competition.

*Mr. John G. Milburn*, with whom *Mr. Joseph W. Welsh*, *Mr. John G. Milburn, Jr.*, and *Mr. Ralph B. Evans* were on the brief, for respondent.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

The court below entered a decree setting aside an order of the Trade Commission, dated July 21, 1919, which directed respondent Publishing Company to cease and desist from entering into or enforcing agreements prohibiting wholesalers from selling or distributing the magazines or newspapers of other publishers. 270 Fed. 881. And the cause is here by certiorari.

The Commission issued an original complaint July 5, 1917, based mainly on a restrictive clause in existing contracts with so-called district agents. Thereafter, respondent changed its agreement. An amended complaint followed, which amplified the original allegations and attacked the second contract and consequent conditions.

The first section of the amended complaint declares there is reason to believe that respondent has been and is using unfair methods of competition contrary to § 5, Act of Congress approved September 26, 1914, c. 311, 38 Stat. 717,[1] and specifically charges: That respondent, a

---

[1] Sec. 5. That unfair methods of competition in commerce are hereby declared unlawful.

The commission is hereby empowered and directed to prevent persons, partnerships, or corporations, except banks, and common carriers subject to the Acts to regulate commerce, from using unfair methods of competition in commerce.

Whenever the commission shall have reason to believe that any such person, partnership, or corporation has been or is using any unfair method of competition in commerce, and if it shall appear to the commission that a proceeding by it in respect thereof would be to the interest of the public, it shall issue and serve upon such person, partnership, or corporation a complaint stating its charges in that respect, and containing a notice of a hearing upon a day and at a place therein fixed at least thirty days after the service of said complaint. The person, partnership, or corporation so complained of shall have the right to appear at the place and time so fixed and show cause why an order should not be entered by the commission

Pennsylvania corporation with principal place of busi-
ness at Philadelphia, has long engaged in publishing, sell-
ing and circulating weekly and monthly periodicals in
interstate commerce. That with intent, purpose and
effect of suppressing competition in the publication, sale
and circulation of periodicals it now refuses and for some
months past has refused to sell its publications to any
dealer who will not agree to refrain from selling or dis-
tributing those of certain competitors to other dealers or
distributors. That with the same intent, purpose and
effect it is making and for several months last past
has made contracts with numerous wholesalers to dis-
tribute its periodicals as agents, and not to distribute
those of other publishers without permission. That
wholesalers so restricted are the principal and often the
only medium for proper distribution of weekly and

---

requiring such person, partnership, or corporation to cease and desist
from the violation of the law so charged in said complaint. . . .
If upon such hearing the commission shall be of the opinion that the
method of competition in question is prohibited by this Act, it shall
make a report in writing in which it shall state its findings as to the
facts, and shall issue and cause to be served on such person, partner-
ship, or corporation an order requiring such person, partnership, or
corporation to cease and desist from using such method of competi-
tion. .. . .

If such person, partnership, or corporation fails or neglects to obey
such order of the commission while the same is in effect, the commis-
sion may apply to the circuit court of appeals of the United States,
within any circuit where the method of competition in question was
used or where such person, partnership, or corporation resides or
carries on business, for the enforcement of its order, and shall certify
and file with its application a transcript of the entire record in the
proceeding, including all the testimony taken and the report and
order of the commission. Upon such filing of the application and
transcript the court shall cause notice thereof to be served upon such
person, partnership, or corporation and thereupon shall have juris-
diction of the proceeding and of the question determined therein, and
shall have power to make and enter upon the pleadings, testimony,
and proceedings set forth in such transcript a decree affirming, modi-

monthly periodicals in various localities throughout the United States, and many of the so-called agents formerly operated under contracts with respondent which abridged their liberty of resale.

The second section declares there is reason to believe respondent is violating § 3, Act of Congress approved October 15, 1914,—Clayton Act—c. 323, 38 Stat. 730,[1] and

---

fying, or setting aside the order of the commission. The findings of the commission as to the facts, if supported by testimony, shall be conclusive. If either party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the proceeding before the commission, the court may order such additional evidence to be taken before the commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. . . .

Any party required by such order of the commission to cease and desist from using such method of competition may obtain a review of such order in said circuit court of appeals by filing in the court a written petition praying that the order of the commission be set aside. A copy of such petition shall be forthwith served upon the commission, and thereupon the commission forthwith shall certify and file in the court a transcript of the record as hereinbefore provided. Upon the filing of the transcript the court shall have the same jurisdiction to affirm, set aside, or modify the order of the commission as in the case of an application by the commission for the enforcement of its order, and the findings of the commission as to the facts, if supported by testimony, shall in like manner be conclusive.

[1] "Sec. 3. That it shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies or other commodities, whether patented or unpatented, for use, consumption or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery,

specifically charges: That respondent publishes, sells and circulates weekly and monthly periodicals in interstate commerce. That for some months past, in such commerce, it has sold and is now selling and making contracts for the sale of its publications and periodicals for use and resale and is fixing the price charged on condition, agreement or understanding that the purchaser shall not sell other publications or periodicals, thereby substantially lessening competition and tending to create a monopoly.

Respondent replied to the notice to show cause why it should not be required to desist " from the violations of law charged in this complaint." It denied unlawful conduct and claimed that the parties contracted with as agents were such in fact; that their services were necessary for the maintenance of the plan originated by it of, distributing publications through school boys, who require special superintendence; and further, that such agents had lawfully agreed to abstain from other connections and devote their time and attention to superintending the boys and to the general upbuilding of sales. Copies of respondent's first and second agreements with distributors accompanied the answer. The first had then been superseded and largely discontinued.

The second contract provides that upon requisition respondent will consign its publications to the agent as he may require, retaining title until they are sold; that the agent will supply the demand of boys and dealers at specified prices; will use reasonable efforts and devote all nec-

supplies or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

Section 11 authorizes the Trade Commission to enforce § 3, with certain exceptions, and directs that this shall be done as prescribed by the act establishing the Commission, *supra,* with like power of review in the courts.

essary time to promoting the sales of such publications; " that without the written consent of the publisher he will not display, deliver or sell any copies of any one of said publications before the authorized publication date as specified in the printed requisition blanks, or dispose of any copies of said publications in the territory of any other district agent or special agent of the publisher, or *act as agent for or supply at wholesale rates any periodicals other than those published by the publisher,* or directly or indirectly furnish to any other publisher or agent the names and addresses of the persons to whom the publisher's publications are sold or delivered; " that subject to the principal's direction and control the agent shall train, instruct and supervise an adequate force of boys for distributing the publications; and that he will return unsold copies, their cover pages or headings.

After taking much testimony—2500 pages—the Commission made a brief and rather vague report of two pages, containing findings and conclusions based on the second contract with dealers and without direct reference to the earlier one. The substance of the report follows.

Paragraph one. Respondent, a Pennsylvania corporation with principal place of business at Philadelphia, is engaged in publishing, selling and distributing weekly and monthly periodicals among the States.

Paragraph two. " That in the course of such commerce, the respondent has entered into contracts with certain persons, partnerships or corporations to sell or distribute its magazines, by the terms of which contracts such persons, partnerships or corporations, have agreed, among other things, *not to 'act as agent for or supply at wholesale rates any periodicals other than those published by the publisher,'* [1]—*the respondent herein—without the written consent of such publisher; that of such persons,*

---

[1] These words are quoted from the second contract.
45646°—23——37

*partnerships or corporations, approximately four hundred forty-seven (447), hereinafter referred to as 'dealers,' are and previous to entering into such contracts with respondent were regularly engaged in the business of wholesale dealers in newspapers or magazines, or both, and as such are as aforesaid engaged in the sale or distribution of magazines, or newspapers, or both, of other publishers; that many of said four hundred forty-seven (447) dealers, and many others who have become such wholesale dealers since entering into such contracts, bound by said contract provision as aforesaid, have requested respondent's permission to engage also in the sale or distribution of certain publications competing in the course of said commerce, with those of respondent, which permission as to said competing publications has been uniformly denied by respondent; that in enforcing said contract provision as to said dealers, and in denying them said permission, respondent has prevented and now prevents certain of its competitors from utilizing established channels for the general distribution or sale of magazines or newspapers, or both, of different and sundry publishers; that such established channels are in most instances the principal and most efficient, and in numerous cases, the only medium for the distribution of such publications in the various localities of the United States;* that such method of competition so employed by respondent in the course of such commerce, as aforesaid, has proved and is unfair."

Paragraph three. "That in the course of such commerce, the respondent has made sales of its magazines to, or entered into contracts for the sale of the same with certain persons, partnerships or corporations, by the terms of which sales, or contracts for such sales, such persons, partnerships or corporations have agreed, among other things" [here follow, without material change, the words of paragraph two printed, *supra*, in italics]; "that the effect of said contract provision has been, and is, to sub-

stantially lessen competition with respondent's magazines and tends to create for the respondent a monopoly in the business of publishing magazines of the character of those published by respondent."

The Commission concluded that the method of competition described in paragraph two of the report violates § 5, Act of September 26, 1914, and that the acts and conduct specified in the third paragraph violate § 3, Act of October 15, 1914. And it thereupon ordered: That the respondent cease and desist, while engaged in interstate commerce, from entering into any contracts, agreements or understandings which forbid persons, partnerships or corporations already engaged in the sale or distribution of magazines or newspapers, or both, of other publishers, from acting as agents for, selling or supplying to others at wholesale rates, periodicals other than respondent's without its consent; and from contracting with those already engaged in the sale or distribution of magazines or newspapers, or both, of other publishers, forbidding them from selling or distributing or continuing to sell or distribute the same; and from enforcing any provision of an outstanding contract whereby one now engaged in the sale or distribution of magazines or newspapers, or both, of other publishers is forbidden to sell or distribute the same without respondent's permission.

The statute provides (§ 5) that when the Commission's order is duly challenged it shall file a transcript of the record, and thereupon the court shall have jurisdiction of the proceedings and the question determined therein and shall have power to make and enter, upon the pleadings, testimony and proceedings, a decree affirming, modifying or setting aside the order; but the Commission's findings as to the facts, if supported by evidence, shall be conclusive. The court is also empowered to order the taking of additional evidence for its consideration.

We have heretofore pointed out that the ultimate determination of what constitutes unfair competition is for

the court, not the Commission; and the same rule must apply when the charge is that leases, sales, agreements or understandings substantially lessen competition or tend to create monopoly. *Federal Trade Commission* v. *Gratz,* 253 U. S. 421, 427.

Manifestly, the court must inquire whether the Commission's findings of fact are supported by evidence. If so supported, they are conclusive. But as the statute grants jurisdiction to make and enter, upon the pleadings, testimony and proceedings, a decree affirming, modifying or setting aside an order, the court must also have power to examine the whole record and ascertain for itself the issues presented and whether there are material facts not reported by the Commission. If there be substantial evidence relating to such facts from which different conclusions reasonably may be drawn, the matter may be and ordinarily, we think, should be remanded to the Commission—the primary fact-finding body—with direction to make additional findings, but if from all the circumstances it clearly appears that in the interest of justice the controversy should be decided without further delay the court has full power under the statute so to do. The language of the statute is broad and confers power of review not found in the Interstate Commerce Act. *Louisville & Nashville R. R. Co.* v. *Behlmer,* 175 U. S. 648, 675, 676; *Interstate Commerce Commission* v. *Clyde S. S. Co..* 181 U. S. 29, 32; and *Interstate Commerce Commission* v. *Chicago, Burlington & Quincy R. R. Co.,* 186 U. S. 320, 340, while helpful as to proper practice, do not determine the present problem.

Here we find a vague general complaint charging unfair methods of competition and also sales and contracts for sales on condition that the purchaser shall not deal in other publications. This is followed by an answer setting out the original agreement with dealers and also the substituted form. The findings of fact make no refer-

ence whatever to the first agreement, but do show that respondent had entered into the second (quoting its language) with " certain " (no number is given but there were 1535) persons, partnerships and corporations, approximately 447 of whom before making such contracts were wholesale dealers in newspapers and magazines. Further, that many of this 447, as well as other parties to such contracts, have been denied permission to distribute the periodicals of other publishers. And that in these ways the most efficient established channels of distribution have been closed to competitors, competition lessened and a tendency to monopoly established.

The present record clearly discloses the development of respondent's business, how it originated the plan of selling through school boys, the necessity for exclusive agents to train and superintend these boys and to devote their time and attention to promoting sales, and also contracts with 1535 such agents. The Commission's report suggests no objection as to 1088 of these representatives who, prior to their contracts, had not been engaged in selling and distributing newspapers or periodicals for other publishers. There is no sufficient evidence to show that respondent intended to practice unfair methods or unduly to suppress competition or to acquire monopoly, unless this reasonably may be inferred from making and enforcing the second or substituted agreement with many important wholesale dealers throughout the country.

Judged by its terms, we think this contract is one of agency, not of sale upon condition, and the record reveals no surrounding circumstances sufficient to give it a different character. This, of course, disposes of the charges under the Clayton Act.

The engagement of competent agents obligated to devote their time and attention to developing the principal's business, to the exclusion of all others, where noth-

ing else appears, has long been recognized as proper and
unobjectionable practice. The evidence clearly shows
that respondent's agency contracts were made without
unlawful motive and in the orderly course of an expand-
ing business. It does not necessarily follow because
many agents had been general distributors, that their
appointment and limitation amounted to unfair trade
practice. And such practice cannot reasonably be in-
ferred from the other disclosed circumstances. Having
regard to the undisputed facts, the reasons advanced to
vindicate the general plan are sufficient.

Effective competition requires that traders have large
freedom of action when conducting their own affairs.
Success alone does not show reprehensible methods, al-
though it may increase or render insuperable the difficul-
ties which rivals must face. The mere selection of com-
petent, successful and exclusive representatives in the
orderly course of development can give no just cause for
complaint, and, when standing alone, certainly affords no
ground for condemnation under the statute.

In the present cause the Commission has not found all
the material facts, but considering those which it has
found and the necessary effect of the evidence, the order
to desist is clearly wrong and should be set aside without
further delay.

*Affirmed.*

MR. CHIEF JUSTICE TAFT, doubting.

The sentence in the majority opinion, which makes me
express doubt, is that discussing the duty of the court in
reviewing the action of the Federal Trade Commission
when it finds that there are material facts not reported by
the Commission. The opinion says:

" If there be substantial evidence relating to such facts
from which different conclusions reasonably may be
drawn, the matter may be and ordinarily, we think, should

be remanded to the Commission—the primary fact-finding body—with direction to make additional findings, but if from all the circumstances it clearly appears that in the interest of justice the controversy should be decided without further delay the court has full power under the statute so to do."

If this means that where it clearly appears that there is no substantial evidence to support additional findings necessary to justify the order of the Commission complained of, the court need not remand the case for further findings, I concur in it. It is because it may bear the construction that the court has discretion to sum up the evidence *pro* and *con* on issues undecided by the Commission and make itself the fact-finding body, that I venture with deference to question its wisdom and correctness. I agree that in the further discussion of the evidence, the reasoning of the opinion of the Court would seem to justify the view that it does not find the evidence sufficient to support additional findings by the Commission justifying its order. I only register this doubt because I think it of high importance that we should scrupulously comply with the evident intention of Congress that the Federal Commission be made the fact-finding body and that the Court should in its rulings preserve the Board's character as such and not interject its views of the facts where there is any conflict in the evidence.

I am authorized to say that MR. JUSTICE BRANDEIS concurs with me in this.