## TEMPLE ANTHRACITE COAL CO. v. FEDERAL TRADE COMMISSION.

### No. 4434.

Circuit Court of Appeals, Third Circuit.
July 9, 1931.

WOOLLEY, Circuit Judge, dissenting.

Wm. J. Fitzgerald, John R. Wilson, and John P. Kelly, all of Scranton, Pa., for plaintiff.

Robert E. Healy and Martin A. Morrison, both of Washington, D. C., Edward L. Smith, of Phillipsburg, N. J., and H. A. Cox, of Washington, D. C., for defendant.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and THOMPSON, District Judge (now Circuit Judge).

THOMPSON, Circuit Judge.

This case comes here upon the petition of the Temple Anthracite Coal Company for review of an order entered by the Federal Trade Commission requiring the petitioner to cease and desist from alleged violation of the provisions of section 7 of the Clayton Act (Act of October 15, 1914, c. 323, § 7, 38 Stat. 731 [15 USCA § 18]).

The uncontradicted facts developed at the hearing are as follows:

The petitioner is a corporation of the state of Delaware organized August 25, 1924, with an authorized capital stock of 60,000 shares of no par value; its registered office is in Dover, Del.; and it maintains an office in Scranton, Pa.

The Temple Coal Company is a Pennsylvania corporation with its principal office and place of business in Scranton. Its capital consists of 10,000 shares of common stock of par value of $100, all issued and outstanding in October, 1924, when the Commission's complaint was issued. It has been and is engaged in mining and selling anthracite coal from its mines in Pennsylvania. Prior to 1924, it had acquired and now owns the physical assets of the Northwest Coal Company, Edgerton Coal Company, Sterrick Creek Coal Company, Babylon Coal Company, and Forty Fort Coal Company. It owns all of the capital stock of the Mount Lookout Coal Company, engaged in the mining of anthracite coal in Pennsylvania and in the sale of such coal. It also owns 80 per cent. of the capital stock of the Lackawanna Coal Company, Limited, also engaged in mining of anthracite coal in Pennsylvania and the sale of such coal.

The collieries owned by the Temple Coal Company and those in which it owns a controlling stock interest are located in Lackawanna and Luzerne counties in the northern anthracite field of Pennsylvania. In August, 1924, the total coal in place in all of the properties owned, controlled, and leased by the Temple Coal Company, the Lackawanna Company, Limited, and the Mount Lookout Coal Company was approximately 66,730,205 tons, and the value of the physical properties of those companies was in coal $9,192,750 and in property $3,450,000. Since 1914, the coal mined by the Temple Coal Company, the Lackawanna Coal Company, Limited, and the Mount Lookout Company has been and is sold through Thorne, Neale & Co., Inc., which is engaged in the business of buying and selling anthracite and bituminous coal and maintains offices in Philadelphia, Buffalo, Chicago, Baltimore, and New York. From its offices sales of coal are solicited throughout a large territory traveled by representatives of such offices. The Buffalo office solicits and makes sales in Canada also. Thorne, Neale & Co., Inc., secures orders for coal mined by Temple Coal Company, Lackawanna Coal Company, Limited, and Mount Lookout Coal Company, which orders are transmitted to Temple Coal Company by Thorne, Neale & Co., Inc. These orders give the name of the consignee, destination, route of shipment, the equipment of the cars containing the coal, the mine from which the coal is to be shipped, the quantities and kinds of coal ordered, and the price of the coal, f. o. b. mine. If the price mentioned in the order is satisfactory to Temple Coal Company, the coal is shipped by Temple Coal Company to the customer at the price offered. Thorne, Neale & Co., Inc., collects from the purchaser the selling price of the coal, paying to Temple Coal Company the selling price, less a commission of 4 per cent. for making the sale. In the event that the price on the order given by Thorne, Neale & Co., Inc., to Temple Coal Company for the coal to be shipped is not satisfactory to Temple Coal Company, the order is not filled. Such has been the method of sale employed by Temple Coal Company, Mount Lookout Coal Company, and said Lackawanna Coal Company, Limited, with Thorne, Neale & Co., Inc., at least since 1914.

When shipments of coal are made directly by Temple Coal Company to Thorne, Neale & Co., Inc., the coal is billed to Thorne, Neale

& Co., Inc., at a price agreed upon between it and Temple Coal Company, which price is paid to Temple Coal Company by Thorne, Neale & Co., Inc., irrespective of the price received by Thorne, Neale & Co., Inc., from the ultimate purchaser.

The greater part of the shipments of coal on orders furnished by Thorne, Neale & Co., Inc., went into interstate commerce. Some shipments were made to their customers in Canada.

The East Bear Ridge Colliery Company is a Pennsylvania corporation with its principal office and place of business in Scranton, Pa. Its authorized capital is 25,000 shares of common stock of a par value of $25 each. It is engaged in the business of mining anthracite coal in Pennsylvania and in selling such coal. Its collieries are located in the southern anthracite region in Schuylkill county, Pa., about seventy miles distant from the collieries of the Temple Coal Company and the other coal companies operated by the latter company. Its physical property in September, 1924, consisting of its mines, improvements, and developments, was valued at $893,492.42, and its coal tonnage in the mine was estimated at 4,700,700 tons. Since 1914, the coal mined by the East Bear Ridge Colliery Company has been sold through Madeira, Hill & Co., which is engaged in the business of buying and selling anthracite and bituminous coal.

Madeira, Hill & Co. maintains offices in Philadelphia, New York, Boston, and Washington, from which offices sales of coal are solicited throughout a large territory traveled by the representatives of such offices. Madeira, Hill & Co. secures orders for coal mined by East Bear Ridge Colliery Company, which orders are transmitted to East Bear Ridge Colliery Company by Madeira, Hill & Co. These orders give the name of the consignee, destination, route of shipment, the equipment of the cars containing the coal, the quantities and kinds of coal ordered, and the price of the coal, f. o. b. mine. If the price mentioned in the order is satisfactory to East Bear Ridge Colliery Company, the coal is shipped by East Bear Ridge Colliery Company f. o. b. mine consigned to the customer at the said price, Madeira, Hill & Co. paying to East Bear Ridge Colliery Company the selling price of the coal, less a commission of 4 per cent. for making such sale. Madeira, Hill & Co. collects from the purchaser the selling price of the coal. In the event that the price on the order given by Madeira, Hill & Co. to East Bear Ridge Colliery Com-

pany for the coal to be shipped is not satisfactory to East Bear Ridge Colliery Company, the order is not filled. Such has been the method of sale employed by East Bear Ridge Colliery Company with Madeira, Hill & Co. at least since 1914.

In addition to shipping coal to customers secured by Madeira, Hill & Co., East Bear Ridge Colliery Company, in the usual course of its business, ships coal directly to Madeira, Hill & Co. When such shipments of coal are made directly by East Bear Ridge Colliery Company to Madeira, Hill & Co., the coal is billed to Madeira, Hill & Co. at a price agreed upon between them and East Bear Ridge Colliery Company, which price is paid to East Bear Ridge Colliery Company by Madeira, Hill & Co., irrespective of the price received by Madeira, Hill & Co. from the ultimate purchaser.

The coal sold on orders furnished by Madeira, Hill & Co. was shipped f. o. b. mines, consigned to purchasers in Pennsylvania and interstate commerce. The Temple Coal Company, the Mount Lookout Coal Company, the Lackawanna Coal Company, Limited, and the East Bear Ridge Colliery Company sold coal of the same kinds and sizes, and Thorne, Neale & Co., Inc., and Madeira, Hill & Co. were in active competition in securing orders for coal. The orders solicited, obtained, and filled through Thorne, Neale & Co. were in the same territory, in the same cities, and, in many instances, from the same dealers from whom orders for coal, mined by the East Bear Ridge Colliery Company, were solicited, obtained, and filled through Madeira, Hill & Co.

On or about October 11, 1924, the petitioner, the Temple Anthracite Coal Company, acquired by purchase, and has ever since owned, all of the outstanding capital stock of the Temple Coal Company, and on or about the same date acquired by purchase, and ever since such acquisition has owned, 98 per cent. of the outstanding capital stock of the East Bear Ridge Colliery Company. Through its stock ownership, the Temple Anthracite Coal Company has chosen the officers and directors of the Temple Coal Company and its subsidiary companies and of the East Bear Ridge Colliery Company.

The Federal Trade Commission found that the effect of the acquisition by the Temple Anthracite Coal Company of the capital stock of Temple Coal Company and the East Bear Ridge Colliery Company and the use of such stock has been and is to substantially lessen competition in interstate

commerce between the Temple Coal Company and the East Bear Ridge Colliery Company in violation of the second paragraph of section 7 of the Clayton Act (15 USCA § 18, par. 2). The Commission thereupon entered an order upon the petitioner in the alternative, requiring it, within ninety days of the date of service upon it of the order, to divest itself in good faith of all the capital stock of the Temple Coal Company owned by it and all of its interest therein; or, within ninety days, to divest itself in good faith of all the capital stock of the East Bear Ridge Colliery Company owned by it and all of its interest therein.

The petitioner raises the question whether the Federal Trade Commission had jurisdiction to make the order complained of, its contention being that, because it is a holding company and transacts no business except as holder and owner of the stock of the Temple Coal Company and the East Bear Ridge Colliery Company, and is not engaged in interstate commerce, it does not come within the terms of the Clayton Act. The second paragraph of section 7 of the Clayton Act, upon which the complaint was based, reads as follows: "No corporation shall acquire, directly or indirectly, the whole or any part of the stock or other share capital of two or more corporations engaged in commerce where the effect of such acquisition, or the use of such stock by the voting or granting of proxies or otherwise, may be to substantially lessen competition between such corporations, or any of them, whose stock or other share capital is so acquired, or to restrain such commerce in any section or community, or tend to create a monopoly of any line of commerce."

It is clear from the language of the act that it is the fact of the stock of two or more corporations engaged in interstate commerce being acquired by any other corporation, producing the effect, through the stock-owning corporation, of either substantially lessening competition between them or restraining commerce, or, tending to create a monopoly of any line of commerce, that gives Congress power to prohibit the acquiring of such stock. The power of Congress to legislate upon the subject is not, therefore, dependent upon the corporation prohibited from such stock ownership being itself engaged in interstate commerce. The very language of the act answers the question raised by the petitioner.

It is argued quite extensively on the part of the petitioner that the sales contracts of the Temple Coal Company with Thorne, Neale & Co. and those of East Bear Ridge Colliery Company with Madeira, Hill & Co., under which the coal of the respective companies are sold by the respective sales agents, are not contracts of agency, but are contracts of sale. That contention is made because of the implied concession that, if they are agents of the coal mining companies, then the shipments of coal f. o. b. mines, consigned to customers of the sales agents, are, under the doctrine of agency, the acts of the principal, and the customers are the customers of the principal. Therefore, shipments by the coal companies at the mines f. o. b. cars constitute engagement of the coal companies in interstate commerce. If, however, Thorne, Neale & Co. and Madeira, Hill & Co. are purchasers of the coal, then the delivery to the railroad company at the mines divests title in the coal when it is loaded upon the car, which it is contended, is not interstate commerce. For the purposes of this case, we do not deem it necessary to decide whether the contracts with the sales agents are, in the law, contracts of agency, as contended by the Commission, or contracts of sale as contended by the petitioner. In either case, the coal, so shipped becomes a part of interstate commerce and the shipments are within the regulatory power of Congress.

Pennsylvania R. Co. v. Clark Brothers Coal Mining Co., 238 U. S. 456, 35 S. Ct. 896, 59 L. Ed. 1406; Pennsylvania R. Co. v. Sonman Shaft Coal Co., 242 U. S. 120, 37 S. Ct. 46, 61 L. Ed. 188; Swift & Co. v. United States, 196 U. S. 375, 25 S. Ct. 276, 49 L. Ed. 518.

We conclude that the case was within the jurisdiction of the Federal Trade Commission in carrying out the powers which Congress has granted it.

The Commission reached the conclusion as an ultimate fact that the effect of the purchase, acquisition, and holding of the stock of the two corporations by the respondent has been or may be to substantially lessen competition between the corporations, as alleged in its complaint. We will, therefore, consider whether that ultimate finding of fact is sustained by the basic facts as found from the evidence before the Commission. While the act provides that the findings of fact made by the Commission are final and conclusive, it still remains the duty of the supervising court to determine whether the facts found are such as to warrant the conclusion that the effect of the acquisition of the stock of the two corporations is or may be to substantially lessen competition between

them. See Curtis Publishing Co. v. Federal Trade Commission (C. C. A.) 270 F. 881, 909; Federal Trade Commission v. Curtis Publishing Co., 260 U. S. 568, 579, 580, 43 S. Ct. 210, 67 L. Ed. 408; International Shoe Company v. Federal Trade Commission, 280 U. S. 291, 297, 50 S. Ct. 89, 91, 74 L. Ed. 431.

■ It · is established by the evidence and found by the Commission that Thorne, Neale & Co., Inc., and Madeira, Hill & Co. have been and are in active competition in selling all of the coal of the respective collieries, excepting some small quantities sold locally.

· There are no facts found, and we find no evidence produced before the Commission, to show the relation between the percentage of coal mined and sold by the Temple Coal Company and its subsidiaries and that sold by the East Bear Ridge Colliery Company to the total output of anthracite coal of the same kind and quality in the whole anthracite region. From the facts found as to the value of the annual output of the respective mines, it is quite apparent that the percentage of these mines to the total output cannot be consequential. Therefore, if competition were lessened, its effect upon the whole interstate trade in anthracite coal would not tend to create a monopoly through substantially lessening competition. There is no fact found or evidence to show that there was, prior to the acquisition of the stock, actual direct competition between the Temple Anthracite Company and the East Bear Ridge Coal Company. The Temple Coal Company disposed of all of its coal either by sale or agency contract, through Thorne, Neale & Co., Inc. The East Bear Ridge Colliery Company disposed of all of its coal either by sale or agency contract through Madeira, Hill & Co. However, the evidence shows and the facts found from the evidence show that these two wholesalers in coal were and are in active competition in obtaining orders for sale and in selling to customers through their offices in various cities.

As to this competition, the Commission has found in paragraph 8 as follows: "Said Temple Coal Company, said Mount Lookout Coal Company, said Lackawanna Coal Company, Ltd., and said East Bear Ridge Colliery Company sold coal of the same kinds and sizes, and said Thorne, Neale, and Company, Inc., and said Madeira, Hill and Company were in competition in securing orders for coal, orders for coal mined by said Temple Coal Company, said Mount Lookout Coal Company and said Lackawanna Coal Company, Ltd., being solicited, obtained and filled through said Thorne, Neale and Company, Inc., in the same territory, in the same cities and, in many instances, from the same dealers from whom orders for coal mined by said East. Bear Ridge Colliery Company were solicited, obtained and filled through said Madeira, Hill and Company."

It is shown that, at the time of the hearings and during the period covered by the testimony, these wholesalers were competing in the open market for customers, not only for this coal, but for coal mined by other collieries, and that they are still competing in the same markets and in exactly the same way as they were before the complaint was filed. As long as the contracts with the wholesalers continue in existence, and there is nothing in the case to show that they will not continue, they are each under the same incentive to acquire and sell the output of the respective collieries as they were prior to the complaint. There is no evidence and no facts are found to show that competition between Thorne, Neale & Co., Inc., and Madeira, Hill & Co., in selling the coal of these two companies, has been or may be reduced through the ownership of the stock of the respective companies by Temple Anthracite Coal Company. The only effect which the ownership may be found to have brought about is the reduction of overhead and operating expenses.

In International Shoe Co. v. Federal Trade Commission, supra, Mr. Justice Sutherland says:

"Section 7 of the Clayton Act, as its terms and the nature of the remedy prescribed plainly suggest, was intended for the protection of the public against, the evils which were supposed to flow from the undue lessening of competition. In Standard Oil Co. v. Federal Trade Commission, 282 F. 81, 87, the Court of Appeals for the Third Circuit applied the test to the Clayton Act which had theretofore been held applicable to the Sherman Act (15 USCA § 1 et seq.), namely, that the standard of legality was the absence or presence of prejudice to the public interest by unduly restricting competition or unduly obstructing the due course of trade. In Federal Trade Comm. v. Sinclair Co., 261 U. S. 463, 476, 43 S. Ct. 450, 454, 67 L. Ed. 746, referring to the Clayton Act and the Federal Trade Commission Act (15 USCA §§ 41–51), this court said:

" 'The great purpose of both statutes was to advance the public interest by securing fair

opportunity for the play of the contending forces ordinarily engendered by an honest desire for gain.'

"Mere acquisition by one corporation of the stock of a competitor, even though it result in some lessening of competition, is not forbidden; the act deals only with such acquisitions as probably will result in lessening competition to a substantial degree, Standard Fashion Co. v. Magrane-Houston Co., 258 U. S. 346, 357, 42 S. Ct. 360, 66 L. Ed. 653; that is to say, to such a degree as will injuriously affect the public."

We cannot conclude, because of the ownership in one corporation of the stock of two corporations whose output is sold under contracts with competing wholesalers as distributors, who are found to be in active competition, that these contracts will or are likely to be annulled or terminated. We must take the facts as they exist, and, finding as we do that Thorne, Neale & Co., Inc., and Madeira, Hill & Co. are in active competition, we assume that the interests of the public will be preserved so long as that competition continues.

The Commission found in paragraph 10 of its finding of fact as follows: "The effect of the acquisition by respondent Temple Anthracite Coal Company of the said capital stocks of said Temple Coal Company and of said East Bear Ridge Colliery Company, and the use of such stocks by the voting or granting of proxies, or otherwise, has been and is to substantially lessen competition in interstate commerce between said Temple Coal Company and said East Bear Ridge Colliery Company."

With no evidence in the case to support the finding of fact that the effect of the acquisition of the stock "has been and is to substantially lessen competition," our conclusion is that the actual active competition which is shown by the evidence, without contradiction, to have existed and to continue to exist between Thorne, Neale & Co., Inc., and Madeira, Hill & Co., negatives, so long as it may exist, the very effect which the Commission has found to be caused by the acquisition by the Temple Anthracite Coal Company of the capital stocks of the mining companies.

It is therefore ordered that the order of the Federal Trade Commission be annulled and set aside.

WOOLLEY, Circuit Judge (dissenting).

I am moved to dissent from the judgment of the court because of the different way in which I view the pivotal point of the case. Of the facts, fully and correctly stated in the opinion, I shall stress but two.

One fact is that the complaint charges a violation of the single provision of section 7 of the Clayton Act (15 USCA § 18) which forbids the acquisition of two corporations by a third "where the effect of such acquisition * * * may be to substantially lessen competition between such corporations. * * *" The restraint of trade and monopoly provisions of the section were not invoked and are not involved.

The other fact is that prior to their acquisition by the petitioner in 1924 the two coal companies conducted business under like sales systems, through like sales agencies, with a like power reserved by each to decide when it would and would not fill orders for coal according as it found them satisfactory or unsatisfactory. Prior to the consolidation, these corporations were selling in the same markets in competition with each other.

Thus far I follow the opinion of the court. But the petitioner—the holding company—on a showing that the same sales systems operating through the same sales agencies continue in the business practices of the two companies since their acquisition, contends that, in consequence, the same competition exists—must exist—as before. This contention the court has sustained. It is just here that I am constrained respectfully to depart from its opinion for the reason that, while the two underlying companies before their absorption could, because of their complete independence, separately refuse orders that were unsatisfactory without disturbing competition between them, the power to decide when to accept and refuse orders passed from them on their acquisition by the petitioner and became vested in the petitioner which thereafter could alone determine when orders were unsatisfactory and by directing its self-appointed officials of the two corporations to decline such orders would "substantially lessen competition"—indeed, actually end competition—between the two corporations. Therefore the competition between the underlying companies is not now even potentially the competition which existed between them before their acquisition by the petitioner. Then it was real; now it is formal. Then it arose from the desire of each for individual gain and depended on separate action; now it arises from the desire of a third corporation for gain and depends on the power of that corporation, exercised without restraint, to increase its gain by reducing loss-

es arising from competition between what are now practically its own products by directing its subsidiaries not to fill orders. The petitioner thus has power, ever present, to be exercised at its will, to do the thing denounced by the law. In my judgment, when the petitioner acquired the underlying coal companies and at the same time acquired the power to cause them to decline unsatisfactory orders, there was a complete transfer of power with respect to competition, producing a situation "where the effect * * * may be to substantially lessen competition between such corporations" and certainly will be to lessen or stop competition whenever the temptation to use the power shall arise.

In arriving at the conclusion that the evidence sustains the order of the Commission I have kept in view the fact, at different times lost sight of in this case, that we are not concerned with the lessening of competition between these two companies and other companies in the industry, but are concerned with the lessening of competition between the two companies themselves.