PENNSYLVANIA R. CO. et al. v. INTER-
STATE COMMERCE COMMISSION.
No. 4638.

Circuit Court of Appeals, Third Circuit.
June 16, 1933.

Henry Wolf Bikle, of Philadelphia, Pa. (C. B. Heiserman, of Haverford, Pa., of counsel), for Pennsylvania R. Co. et al.

Frank M. Swacker, of New York City, for petitioner Guiterman.

Wm. H. Bonneville, and E. M. Ebert, both of Washington, D. C., for respondent.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This case is here on petition to set aside an order of the Interstate Commerce Commission requiring the Pennsylvania Railroad Company and the Pennsylvania Company, which is an investment company, whose stock

38

is held by the railroad company, to divest themselves of all the shares of the capital stock of the Lehigh Valley Railroad Company and the Wabash Railway Company, which they own.

The par value of the total amount of outstanding capital stock of the Wabash Railway Company is:

Preferred A ....................$69,333,050
Convertible Preferred B......... 2,462,132
Common .................... 66,697,775

The par value of the shares of all classes of the stock is $100, and all classes have equal voting power.

The par value of the amount of the Wabash stock held by the Pennsylvania Company is:

Preferred A..................$31,290,000
Common .................... 36,290,000

The par value of the total amount of outstanding stock of the Lehigh Valley Railroad Company is:

Cumulative Preferred.........$ 106,300
Common .................... 60,501,700

The par value of the shares of both classes of the stock is $50, and both classes have equal voting power.

The par value of the shares of stock of the Lehigh Valley Railroad Company held by the Pennsylvania Company is $18,251,950.

This proceeding was brought under the authority of section 7 of the Clayton Act of October 15, 1914 (38 Stat. 730 [15 USCA § 18]), the material parts of which provide as follows:

That "No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital of another corporation engaged also in commerce, where the effect of such acquisition may be to substantially lessen competition between the corporation whose stock is so acquired and the corporation making the acquisition, or to restrain such commerce in any section or community, or tend to create a monopoly of any line of commerce. * * *

"This section shall not apply to corporations purchasing such stock solely for investment and not using the same by voting or otherwise to bring about, or in attempting to bring about, the substantial lessening of competition."

The general question is whether or not there is any substantial evidence in the case

that brings it within the provisions of the above section of the act.

Section 11 of the act (15 USCA § 21), provides that "the findings of the commission or board as to the facts, if supported by testimony, shall be conclusive." The Commission found that the effect of the acquisition may be to substantially lessen competition between the Pennsylvania Railroad Company and the other two companies, and that the purchase was not solely for investment. Accordingly, if there is any substantial evidence to sustain these findings, they are binding upon us. Federal Trade Commission v. Curtis Publishing Company, 260 U. S. 568, 43 S. Ct. 210, 67 L. Ed. 408.

Whether or not there is any substantial evidence to support the findings of the commission depends in this case somewhat upon the interpretation of the words "may be" in the sentence, "where the effect of such acquisition may be to substantially lessen competition."

The Commission contends that, where the effect of the acquisition by one corporation engaged in commerce of the stock of another likewise engaged may possibly be "to substantially lessen competition" between them, the acquisition is prohibited by the statute. It says that the mere possibility that it will have such effect, the possession of the power regardless of its use, brings the acquisition within the inhibition of the statute. This was the trend of the decisions of the Supreme Court under the earlier Sherman Act (15 USCA §§ 1–7, 15 note) cases. Northern Securities Co. v. United States, 193 U. S. 197, 24 S. Ct. 436, 48 L. Ed. 679; Harriman v. Northern Securities Co., 197 U. S. 244, 25 S. Ct. 493, 49 L. Ed. 739; United States v. Reading Co., 253 U. S. 26, 40 S. Ct. 425, 64 L. Ed. 760; United States v. Southern Pacific Co., 259 U. S. 214, 42 S. Ct. 496, 66 L. Ed. 907. But in the later cases the Supreme Court has brought the element of "probability" into the interpretation of the words "may be." The mere possession of power is not, under all circumstances, sufficient to bring the acquisition of stock by one corporation of another within the inhibition of the act. The possession of power must be accompanied by the probability that it will be exercised to lessen competition to a substantial degree, before it is prohibited by the act. The purpose of using the words "may be" was to prevent such acquisition of the stock of a competitor as would under the circumstances probably lessen competition to a substantial degree. Standard Fashion Co. v.

Magrane-Houston Co., 258 U. S. 346, 357, 42 S. Ct. 360, 66 L. Ed. 653; International Shoe Co. v. Federal Trade Commission, 280 U. S. 291, 50 S. Ct. 89, 91, 74 L. Ed. 431. In the last case cited, the Supreme Court said: "Mere acquisition by one corporation of the stock of a competitor, even though it result in some lessening of competition, is not forbidden; the act deals only with such acquisitions as probably will result in lessening competition to a substantial degree." In discussing the word "may" in section 3 (15 USCA § 14) in the case of Standard Fashion Company v. Magrane-Houston Company, 258 U. S. 346, 42 S. Ct. 360, 66 L. Ed. 653, the Supreme Court used substantially the same language.

The Clayton Act (38 Stat. 730) was in the nature of a supplement to the Sherman Act, and was intended as a preventive measure which would restrain in their incipiency acts prohibited by the statute. United States v. United Shoe Machinery Co. (D. C.) 264 F. 138; Swift & Co. v. Federal Trade Commission (C. C. A.) 8 F.(2d) 595; Standard Fashion Co. v. Magrane-Houston Co., 258 U. S. 346, 42 S. Ct. 360, 66 L. Ed. 653.

■ The exact question then is whether or not there is any competent evidence showing such circumstances as would justify the conclusion that the effect of the acquisition of the Wabash and Lehigh Valley stock by the Pennsylvania Company will probably lessen competition to a substantial degree. While the act provides that the findings of fact made by the Commission are conclusive, this does not relieve the court of the duty of determining whether or not there is any evidence which justifies the conclusion that the effect of the acquisition will be to lessen competition between the Pennsylvania and the Wabash and Lehigh Valley Companies to a substantial degree. Temple Anthracite Coal Company v. Federal Trade Commission (C. C. A.) 51 F.(2d) 656, 659.

We cannot assume that this will result from the mere acquisition of the stock. As a matter of fact, there has not been any lessening of competition since the stock was acquired. On the contrary, the evidence affirmatively shows increased competition between the Pennsylvania Railroad Company and the other two companies. This was recognized by the Commission, which did not even attempt to controvert the facts showing increased competition, but suggested that it might be due to decrease in traffic. This, however, cannot be the explanation, for increased competition was carried on in 1929 when traffic was at its height.

Since the acquisition of the stock by the Pennsylvania Company, there has not been any change in the policy of administration of any of the three railroad companies in question, and the excellence of the service maintained on the roads has been constantly improved at the same time. The fact that they have not lessened competition during these troublous times would indicate that they will not do so in the future. We do not find any evidence that would justify an inference that a different policy will be inaugurated among the companies in the future from that followed during the past or that competition will be substantially lessened between the companies.

■ The provisions of section 7 of the act prohibiting the acquisition of the stock of one corporation engaged in commerce by another so engaged do not apply if the stock is purchased "solely for investment," and the stock has not been used by voting or otherwise to bring about, or in attempting to bring about, the lessening of competition. In other words, a railroad company engaged in commerce may acquire the stock of another railroad company likewise engaged, if the stock is purchased solely for investment.

The word "investment", as the Commission said, "is one of broad application, including in its various uses purchases of practically every kind and description and for every purpose." One of those purposes is the purchase of property for the sake of the direct return which can be realized from such property. This is the definition to which the Commission restricted the word in this case, but it is not primarily a technical word and has other meanings. It ordinarily signifies the use of money to purchase property, personal or real, for any purpose from which income or profit is expected, presently or in the future, speculatively or permanently. The Standard Dictionary; Webster's New International Dictionary; the Century Dictionary; the Oxford Dictionary; La Belle Iron Works v. United States, 256 U. S. 377, 41 S. Ct. 528, 65 L. Ed. 998; Person v. Board of State Tax Commissioners, 184 N. C. 499, 115 S. E. 336 (1922); Morse v. Equitable Life Assurance Society, 124 App. Div. 235, 108 N. Y. S. 986. Economists, accountants, and bankers use the word in this broad sense. Mr. L. F. Loree, president of the Delaware & Hudson Railroad, a witness for the Commission, testified that he thought the price paid,

as an investment for the stock, was cheap. Professor W. M. Daniels of Yale University, a noted economist, and former member of the Interstate Commerce Commission, testified that placing money where an asset is realized worth 7 per cent. or more is just as much an investment as if 7 per cent. in current money was received.

But, if it be used in the restricted sense, the current income from the stock acquired in this case has been considerable. On the Lehigh Valley stock, the Pennsylvania Company received $2,920,311.96 from 1928 to April, 1930, inclusive, and on the Wabash stock it received $3,561,000 from 1927 to February, 1930.

■ In fairly construing the act, the word "investment" should not be restricted to a single one of its many meanings when the actual effect of the acquisition of the stock in question has not in fact been "to substantially lessen competition" between the Pennsylvania Railroad Company and the Wabash and Lehigh Valley Railroads. This statute is partly penal in its nature, and an ancient and well-established rule of construction requires that we do not bring within its provisions by narrow, technical, or forced construction of words cases which are not clearly embraced by it. Northern Securities Company v. United States, 193 U. S. 197, 24 S. Ct. 436, 48 L. Ed. 679.

The use of the word generally by the Commission has not been restricted to this single meaning, and in the pleadings in this very case it has given to the word the broader meaning of the dictionaries, text-books, writers, and courts.

■■ The evidence shows that railroad companies generally invest a substantial part of their surplus in securities of companies constituting members of the family group which make up the system of the purchasing company. This was the custom both before and after the passage of the Clayton Act, and this they may do under the investment provision of section 7, even though the effect of the purchase, in the absence of intent, might incidentally lessen competition, if the stock acquired is not used by voting or otherwise to bring about, or in attempting to bring about, the substantial lessening of competi-

tion. But, if there is an intent on the part of the corporation acquiring the stock to restrain interstate commerce or to bring about the substantial lessening of competition, by voting or otherwise using the stock, even though commerce has not actually been restrained, the provisions of the statute apply. But, where neither the intent nor the effect of the acquisition of the stock stifles competition, the transaction is not prohibited by either the Sherman Act or the Clayton Act. The evidence seems uncontradicted and rather conclusive that the purchase of the stock of the two railroad companies by the Pennsylvania Company was, within the meaning and fair interpretation of the act, made "solely for investment."

The remaining question is whether or not the stock has been used by voting or otherwise to bring about, or in attempting to bring about, a substantial lessening of competition.

There is no testimony whatever to show that the stock has been so used, and, as we understand the position of the Commission, it does not contend that it has been so used, but it does contend that the possibility that it may be so used and that it might have the effect to substantially lessen competition justify its order requiring the Pennsylvania Company to divest itself of the stock. To this we cannot assent.

■ We are not primarily concerned with the economic result of our interpretation of the statute. That is a matter for Congress and not the courts, but to force all this stock suddenly upon the market might have such a disastrous effect in these troublous times that it has caused us to consider most carefully the questions in this case.

Since there is no competent evidence showing that the effect of the acquisition of the stock of the Lehigh Valley and Wabash Railroads by the Pennsylvania Company may be to lessen competition between these companies and the Pennsylvania Railroad Company to a substantial degree, or to restrain commerce or to create a monopoly, and since the stock was purchased solely for investment, and has not been used, by voting or otherwise, to bring about, or in attempting to bring about, the substantial lessening of competition, it follows that the order of the Commission must be reversed.