**UNITED STATES v. TEXAS & P. RY. CO.**

No. 8318 Cr.

District Court, N. D. Texas, Dallas Division.
Nov. 1, 1935.

Clyde G. Hood, Asst. U. S. Atty., of Dallas, Tex.

Z. W. Scott, of Washington, D. C., for Interstate Commerce Commission.

T. D. Gresham, M. E. Clinton, and W. B. Hamilton, all of Dallas, Tex., for defendant Texas & P. Ry. Co.

ATWELL, District Judge.

The United States Attorney filed a duly verified information, by leave of court, against the Texas & Pacific railway company. This information charges that the defendant, a common carrier, in interstate commerce, purchased 60 per cent. of the 4,000 shares of the Fort Worth Belt Railway Company, another common carrier of interstate commerce, for the sum of $900,-000; that the purchase of such railway was authorized, in accordance with paragraph 2 of section 5 of title 49 USCA, but that the Interstate Commerce Commission, as a condition of such authorization, required the defendant to pay not more than $700,000 for the stock; that such ex-

cess payment was unlawfully, knowingly, and willfully made. The defendant demurs to the information, and claims that the facts as therein charged do not constitute an offense against the laws of the United States.

Paragraph 2 of section 5 of the Interstate Commerce Act, as added by Transportation Act 1920, § 407, 49 USCA § 5 (2), provides: "Whenever the commission is of opinion, after hearing, upon application of any carrier or carriers engaged in the transportation of passengers or property subject to this chapter, that the acquisition, to the extent indicated by the commission, by one of such carriers of the control of any other such carrier or carriers either under a lease or by the purchase of stock or in any other manner not involving the consolidation of such carriers into a single system for ownership and operation, will be in the public interest, the commission shall have authority by order to approve and authorize such acquisition, under such rules and regulations and for such consideration and on such terms and conditions as shall be found by the commission to be just and reasonable in the premises."

Prior to the passage of this act in 1920, such an acquisition would have been unlawful under section 7 of the Clayton Anti-Trust Act (15 USCA § 18). The Interstate Commerce Commission Act of 1887, 24 Stat. 380 (see 49 USCA § 1 et seq.), contained no such permission. Section 10 of the act (49 USCA § 10) is the penalizing section and reads in part as follows: "Any common carrier subject to the provisions of this chapter * * * who * * * shall willfully do or cause to be done * * * any act, matter, or thing in this chapter prohibited or declared to be unlawful, * * * shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof in any district court of the United States within the jurisdiction of which such offense was committed, be subject to a fine of not to exceed $5,000 for each offense."

It will be noticed that paragraph 2 of section 5 neither prohibits nor declares to be unlawful the acquisition therein allowed upon the permission of the commission. The government contends that the views of the Supreme Court, as expressed in the Chicago Junction Case, 264 U. S. 258, 44 S. Ct. 317, 68 L. Ed. 667, make paragraph 2 of section 5 a "prohibition," and

that it, therefore, comes within the meaning of the punishing part of the act.

Paragraph 8 of section 16 (49 USCA § 16 (8), provides that: "Who knowingly fails or neglects to obey any order made under the provisions of sections 3, 13, or 15 of this act [chapter], shall forfeit to the United States the sum of $5,000 for each offense."

Paragraph 1 of section 12 (49 USCA § 12 (1) provides: "The commission is authorized and required to execute and enforce the provisions of this chapter; and, upon the request of the commission, it shall be the duty of any district attorney of the United States to whom the commission may apply to institute in the proper court and to prosecute under the direction of the Attorney General of the United States all necessary proceedings for the enforcement of the provisions of this chapter and for the punishment of all violations thereof." It will be noted that the concluding phrase of this last quotation seems to recognize two sorts of offenses, or evasions of the provisions of the chapter, i. e., civil and criminal.

Cases mentioning this act and dealing somewhat with its authorities and limitations, are Interstate Commerce Comm. v. B. & O. R. Co., 152 I. C. C. 721, 723; Id., 160 I. C. C. 785, 791; Interstate Commerce Comm. v. Pennsylvania Railway Co., 169 I. C. C. 618; Pennslyvania Railway v. I. C. C. (C. C. A.) 66 F.(2d) 37.

But the precise question here, raising the propriety of a criminal prosecution against a railroad for having acquired another railroad, with the consent of the Commission, but without complying with the Commission's limitation of the amount to be paid by the acquiring road, is new.

The novelty, however, disappears when it is remembered that what is sought here by the government is a conviction of the corporation on a criminal charge. It must, therefore, be able to put its finger on the statute violated. There is no clause in this law which either "prohibits" or makes "unlawful" the doing of what the defendant did. That what the defendant did is within the territory of those evils that the Commission is given power to prevent is not a sufficient enactment of a criminal statute to authorize the punishment of even the artificial citizen.

Because what the defendant is charged with having done is not in violation of any statute authorizing criminal punishment, the demurrer must be sustained and the information dismissed.

This, of course, does not prevent the bringing of such civil proceedings as may be necessary to set aside the purchase and sale alleged to be in violation of the provisions of the Commission's order.