## JAMES S. KIRK & CO. et al. v. FEDERAL TRADE COMMISSION.

### No. 4140.

Circuit Court of Appeals, Seventh Circuit.

April 15, 1932.

Rehearing Denied June 22, 1932.

The original petitioner, James S. Kirk & Co., hereinafter referred to as petitioner, brought this proceeding to review and set aside a cease and desist order entered by the Federal Trade Commission against petitioner pursuant to the provisions of Federal Trade Commission Act of 1914, c. 311, 38 Stat. 715, and certain amendatory acts (15 USCA §§ 41–51).

The provisions of the statute which are pertinent to the issues in controversy are found in section 5 of the original act as amended in 1925, c. 229, section 2, 43 Stat. 939, 15 USCA § 45, and are set forth in the margin.[1]

The commission's complaint, which was filed January 9, 1924, alleges that petitioner is in competition with others in the manufacture and sale of soap in interstate commerce; that among its competitors are a number who manufacture or import castile soap from various countries; that genuine castile soap took its name from the province of Castile, Spain; that it is a hard soap, the oil ingredient of which always has been, and now is, olive oil exclusively; that because of the qualities of olive oil as a soap material, and for other reasons, it is considered by the trade and the public generally as an excellent soap, free from substances harmful to the skin or delicate fabrics; that by the medical profession and drug trade it is considered to have qualities requisite for bathing infants and sick persons and for use in medical prescriptions, and is so used; that, in addition to making several brands containing various percent-

[1] 15 USCA § 45:

Par. 1. "Unfair methods of competition in commerce are declared unlawful."

Par. 2. "The commission is empowered and directed to prevent * * * corporations, except banks, and common carriers subject to the Acts to regulate commerce, from using unfair methods of competition in commerce."

Par. 3. "Whenever the commission shall have reason to believe that any such * * * corporation has been or is using any unfair method of competition in commerce, and if it shall appear to the commission that a proceeding by it in respect thereof would be to the interest of the public, it shall issue and serve upon such * * * corporation a complaint stating its charges in that respect. * * * If upon such hearing the commission shall be of the opinion that the method of competition in question is prohibited by this subdivision of this chapter, it shall make a report in writing in which it shall state its findings as to the facts and shall issue and cause to be served on such * * * corporation an order requiring such * * * corporation to cease and desist from using such method of competition. * * *"

Par. 4. "If such * * * corporation fails or neglects to obey such order * * * the commission may apply to the circuit court of appeals of the United States * * * for the enforcement of its order, * * * the court * * * shall have jurisdiction of the proceeding * * * and shall have power to make and enter upon the pleadings, testimony, and proceedings set forth in such transcript a decree affirming, modifying, or setting aside the order of the commission. * * *"

Par. 5. "Any party required by such order of the commission to cease and desist * * * may obtain a review of such order in said circuit court of appeals by filing in the court a written petition praying that the order * * * be set aside. * * * Upon the filing of the transcript the court shall have the same jurisdiction to affirm, set aside, or modify the order of the commission as in the case of an application by the commission for the enforcement of its order, and the findings of the commission as to the facts, if supported by testimony, shall in like manner be conclusive."

ages of olive oil, Kirk & Co., for more than four years, has made seven brands of soap—all called castile but none of which contain the word "olive" or "olive oil" in their names, and four of which contain the word "cocoa"—and that none of them have any olive oil content; that such labeling has the capacity and tendency to deceive the trade and public into the erroneous belief that they are genuine castile soaps; that genuine castile soaps are more costly than other soaps because of the higher cost of olive oil, and by reason thereof petitioner sells its soaps for less than its competitors who import, or manufacture, and sell genuine castile soap; that such fact has the capacity and tendency to cause the trade and public to purchase petitioner's so-called castile soaps in preference to the genuine and more costly castile soaps; and that all acts of petitioner as referred to are prejudicial to the public.

On December 12, 1928, the commission made its findings of fact and issued to petitioner an order to cease and desist from using the word "olive," or any representation indicating an olive oil source, or the word "castile" and the words "olive oil soap," either alone or in conjunction with any other word or words which are the name of, or are descriptive or suggestive of, an oil or fat, in labeling, branding, or otherwise describing soap for sale or sold in commerce, the oil or fatty composition of which is not wholly derived from olives; except that when an oil or fat of a soap is composed of two or more oils or fats including olive oil or fat, and in such proportion that the soap in any of its qualities is substantially affected by any ingredient from olives, the word "olive" shall not be used in the manner above enumerated unless the name of each oil or fat therein is used immediately in conjunction with the word "olive" or with said representation indicating an olive oil source, and in a manner equally conspicuous with and similar to that in which the word "olive" or said representation is so used, in order to indicate clearly that such soap is not made wholly from oil or fat derived from olives.

Findings of the commission, which bear directly on petitioner's contentions, and its conclusion are set forth in the margin.[2]

On July 7, 1930, the Proctor and Gamble Company purchased the soap business and brands of Kirk & Co., and it was permitted to intervene as a copetitioner.

Cutting, Moore & Sidley, of Chicago, Ill. (D. F. McPherson and James F. Oates, Jr., both of Chicago, Ill., Frank F. Dinsmore, of Cincinnati, Ohio, and Horace Kent Tenney, of Chicago, Ill., of counsel), for petitioners.

Robt. E. Healy, Chief Counsel, Federal Trade Commission, and Martin A. Morrison, Asst. Chief Counsel, Federal Trade Commission, both of Washington, D. C., and

of olive oil by the use of an alkaline salt. Caustic soda (sodium hydroxide) is the saponifying agent most commonly used in modern times in conjunction with olive oil to produce Castile Soap."

"Paragraph Eighteen: The word 'Cocoa,' which has been and is being used by respondent as part of the brand name or description of some of its soaps which respondent sold and is selling as Castile Soap describes or indicates an ingredient known as Cocoa or Chocolate."

"Paragraph Twenty-one: The use by respondent, either alone or together, of the word, 'olive,' or the words, 'olive oil,' in labeling, branding or otherwise describing soap made partly of oil or fat derived from olives and partly of other oil or fat and offering such soap for sale and selling or causing the same to be sold as herein set forth without stating, immediately in conjunction with, or in association with, said word or words, and in a manner equally conspicuous with and similar in all respects to that in which said word or words are used, the name or names of the other oils or fats in the composition of the soap or that such soap is not made wholly of oil or fat derived from olives has the tendency and capacity to deceive members of the public into the belief that such soap was and is composed, as to its fatty composition, exclusively of oil or fat derived from olives.

"Paragraph Twenty-two: Relying upon the representations of respondent in the labeling, branding and description of its soaps, sold and caused to be sold by respondent as and for Castile Soap and Olive Oil Soap, as set forth above, and because respondent is and has been enabled to offer for sale and has offered and sold its said soaps at a lower price by reason of their composition than the prices at which respondent's competitors can offer and sell and have offered and sold Castile Soap, members of the public, including physicians, pharmacists, druggists and others have been deceived into purchasing and using respondent's said soaps instead of and in place of Castile Soap or Olive Oil Soap, among other purposes for use in the compounding of medical prescriptions and for use in connection with the care of babies.

"Paragraph Twenty-three: There are among the competitors of respondent referred to herein many who make and sell soap made, as to its oil or fatty composition, only of oil or fat derived from olives and who properly represent their said soap as Castile Soap and as Olive Oil Soap, and respondent's acts and practices as above set forth tend to and do divert business from such competitors and otherwise injure and prejudice them."

"Conclusion. The practices of the respondent under the conditions and circumstances set forth in the foregoing findings are to the prejudice of the public and of respondent's competitors, and are unfair methods of competition in commerce and constitute a violation of Section 5 (of Act of 1914) * * *."

[2] "Paragraph Five: Castile Soap is a hard soap produced from oil or fat which is derived solely from olives and without the addition or admixture of any artificial perfume, or any substance as a filler or builder. It derives its odor solely from the olive oil constituent in its composition.

"Castile Soap is produced by the saponification

Edward E. Reardon, of New York City, for respondent.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge (after stating the facts as above).

The basis of the commission's complaint is to the effect that castile soap is one in which olive oil constitutes the sole oily or fatty ingredient. The commission has found this to be true, as a matter of fact, and it is supported by some evidence. The respondent, therefore, insists that such finding is conclusive and that unfair competition is established.

In Federal Trade Commission v. Curtis Publishing Co., 260 U. S. 568, 43 S. Ct. 210, 213, 67 L. Ed. 408, the court said:

"We have heretofore pointed out that the ultimate determination of what constitutes unfair competition is for the court, not the Commission * * *. Federal Trade Commission v. Gratz, 253 U. S. 421, 427, 40 S. Ct. 572, 64 L. Ed. 993.

"Manifestly, the court must inquire whether the commission's findings of fact are supported by evidence. If so supported, they are conclusive. But as the statute grants jurisdiction to make and enter, upon the pleadings, testimony and proceedings, a decree affirming, modifying or setting aside an order, the court must also have power to examine the whole record and ascertain for itself the issues presented and whether there are material facts not reported by the commission. If there be substantial evidence relating to such facts from which different conclusions reasonably may be drawn, the matter may be and ordinarily, we think, should be remanded to the commission—the primary fact-finding body—with direction to make additional findings, but if from all the circumstances it clearly appears that in the interest of justice the controversy should be decided without further delay the court has full power under the statute so to do. The language of the statute is broad and confers power of review not found in the Interstate Commerce Act."

It is contended first by petitioner that there are certain material facts, not covered by the findings, which were proven by the evidence and were not contradicted, and which conclusively disprove unfair competition.

For instance, by far the greater number of witnesses, from all parts of the United States, testified that castile soap meant to them a pure high-grade toilet soap; or that it implied no special vegetable oil as an ingredient; or that they had never associated any brand of castile soap with olive oil as an ingredient; or that it meant a soap which would lather satisfactorily in hard water. One hundred fifteen witnesses testified that castile soap meant to them a soap made from cocoanut oil; while one hundred ten witnesses testified that the name indicated that the oily or fatty ingredient was exclusively of olive oil. Regardless of which of these witnesses, if any, were giving the proper meaning of the word "castile" when used in connection with soap, the substance of all their testimony proves beyond question, so far as individual opinions are concerned, that the word "castile" when used with soap means different things to different persons. This diversity of opinion is quite a pertinent fact in the determination of the issues before us. It not only bears directly on the issue of whether petitioner's alleged acts have the capacity and tendency to deceive the trade and the general public; but it is quite material in determining the real meaning of the word "castile" when used in connection with soap, or whether it has more than one meaning, as contended by petitioner.

As a general rule we look to the lexicographer for definitions of words; but, on the other hand, the lexicographer bases his definition upon the use which the public has given the word. Unfortunately, or fortunately, there are many words whose meanings, once correctly and definitely defined, have subsequently through usage acquired different or additional meanings, and such enlarged meanings have been recognized and approved in later dictionaries. Indeed, there are many instances in which it is difficult to trace the connection between the root meaning of a word and its present meaning as established and recognized by usage.

It is contended by petitioner that the word "castile" when used in relation to soap means nothing as to the constituent elements, but refers to the quality of the soap as a whole. The word "Castile" alone does not mean soap of any kind, nor is it the name of a constituent element of any soap ever made. It is the name of a province in Spain, and the commission finds as a fact that castile soap derives its name from the fact that it was first made in the province of Castile in Spain, in a very early day, and that its oily or fatty ingredient was derived

exclusively from olives; that by custom and usage any soap whose sole oily or fatty ingredient is derived from olives is known as castile soap, regardless of its place of manufacture. We are convinced from the record before us that during the earlier years castile soap was recognized and considered as a soap whose sole oily and fatty ingredient was derived from olives, and the dictionaries of the various countries, including America, so defined it, and the pharmacopœias designated it as the one to be used in all medical preparations and prescriptions in which soap was required because its sole oily or fatty ingredient was olive oil. The words "castile soap" thereby became synonymous with "olive oil" soap, and such synonymity still prevails with many people.

In the earlier years of the last century, however, some foreign manufacturers made and sold soaps which they called "castile" soap whose oily or fatty ingredient was not solely of olive oil, and much of those products was imported into America. At that time the soap industry in America was begun, and many of our earlier soap makers did the same thing and have continued the practice up to the present time. During seventy-five years last past that practice has grown to such an extent that practically all of our soap makers are resorting, more or less, to that custom. So far as the record shows, Holbrook & Co. is the only soap manufacturer in the United States whose entire product is made solely of olive oil as the fatty ingredient and is labeled "Pure Olive Oil Castile." That company admitted that it was not a competitor of petitioner, and that almost all of its product was used by the textile trades.

The United States Pharmacopœia from its beginning valiantly attempted to preserve the meaning of the words "castile soap" as a soap whose oily or fatty ingredient consisted solely of olive oil, and such a soap was the only one recognized by it as the equivalent of "sapo," which is the medical term for soap.

In the last edition of that work, however, the equivalent of "sapo" is given as "olive oil castile soap." Petitioner claims that this fact is an implied recognition on the part of the authors of the existence of other castile soaps. Such conclusion does not necessarily follow. The action of the authors may well have been an effort to protect the medical profession and the public by designating what they regarded as genuine castile soap as distinguished from quasi castile soap.

A perusal of the very voluminous record in the case convinces us that the present contrariety of opinion as to the meaning of the words "castile soap" is a result of an effort on the part of certain soap manufacturers, both foreign and American, extending from very early times to the present, to corrupt and change the public's understanding of the meaning of those words to the manufacturers' advantage. That this effort has been in a great degree successful can no more be denied than the methods employed can be approved. As a result of such effort it is not at all surprising that the present laity should have such diversified views as to the meaning of the words, for the record supports us in saying that a greater part of the laity knows very little and cares less as to the constituent elements of any soap.

That in former years the methods used did deceive and had the capacity and tendency to deceive is fully supported by the evidence, and were it not for the action of the Bureau of Standards of the United States Department of Commerce that capacity and tendency would still exist. In Federal Trade Commission v. Winstead Hosiery Co., 258 U. S. 483, 42 S. Ct. 384, 385, 66 L. Ed. 729, Justice Brandeis, speaking for the court, said: "The fact that misrepresentation and misdescription have become so common in the * * * trade that most dealers no longer accept labels at their face value, does not prevent their use being an unfair method of competition."

By the Act of March 3, 1901, 31 Stat. 1449, 15 USCA § 271 et seq., Congress established the National Bureau of Standards and authorized that bureau's director to issue bulletins for public distribution containing such information as might be of value to the public or facilitate the bureau in the exercise of its functions. Pursuant thereto, the following bulletin was promulgated and distributed: United States Department of Commerce, Bureau of Standards. Circular No. 62, "Soap," 3d Edition, published January 24, 1923, at page 9: "Castile Soap was originally made from low-grade olive oils. The name now represents a type of soap, the term 'castile' being applied to a soap intended for toilet or household use, sold usually in large, unwrapped, unperfumed bars, which are cut up when sold or when used. It is often drawn directly from the kettle

without 'crutching,' but is sometimes crutched a little or even enough to make it float and is sometimes milled. It is also sold in small bars both wrapped and unwrapped. The type is not one easily defined, so now when made from olive oil it is invariably sold as olive-oil castile. There are soaps made entirely from coconut oil which are sold as coconut castiles or hard-water castiles. Many other castiles are made from a mixture of coconut oil and tallow."

This circular was discussed in petitioner's briefs and it was ignored by respondent. We deem it quite pertinent and decisive of the question before us. The government, through its agency, the Bureau of Standards, has thus committed itself to the proposition that castile soap may be made of oily and fatty elements other than olive oil. Being solely a question of fact we deem it expedient for other departments of the government, including the judiciary, to accept such construction, if for no other reason than that of consistency.

This being true it necessarily follows that petitioner's methods which are the basis of this action do not constitute unfair competition in so far as they relate to the use of the word "castile."

The commission's findings point out various of petitioner's soaps which are branded or labeled with the words "olive" or "olive oil" and having oil content of less than 100 per cent. olive oil,[3] and the order to cease

and desist prohibits petitioner also from using the words "olive" or "olive oil" in connection with its soap product, except under certain conditions named in the order. The complaint does not refer to the use of those words nor ask any order concerning them, but it is contended by respondent that, inasmuch as the words "castile soap" indicate 100 per cent. olive oil content and are synonymous with the words "olive" or "olive oil" as applied to soap, the allegations of the complaint, and the evidence, are sufficient to support the findings in that respect. But inasmuch as we find against respondent's contention of such synonymity, its contention in this respect cannot prevail.

The order to cease and desist is therefore reversed, with permission to respondent, if it shall so desire, to amend its original complaint against petitioner in such manner as to include petitioner's use of the words "olive" and "olive oil" in connection with soap having oil content of less than 100 per cent. olive oil, or otherwise to proceed in respect to such use of the words "olive" and "olive oil"; and in such case to permit further evidence to be taken, if either party desires so to do, and for all other necessary proceedings not inconsistent with this opinion.

words "Olive Oil Castile," and the statement, "This is a real milled olive oil castile soap of highest quality," and beneath an illustration the words, "No. 425 Olive Oil Washrag Castile." Its fatty content is tallow 60 per cent., cocoanut oil 10 per cent, olive oil 30 per cent.

Paragraph 16: "A toilet soap having printed on the wrappers, 'Kirk Olive. Trade Mark registered,' and having fatty content of tallow 60%, cocoanut oil 10%, palm oil 15%, olive oil 15%."

---

[3] Paragraph 15:

1. "Oreno Olive Oil Castile"—of which it was said in catalog illustration of the soap, "Oreno Olive Oil Castile, made in North Chicago, U. S. A., from Genuine Olive Oil." The fatty composition of this soap is tallow, cocoanut oil, and olive oil, of unknown percentages.

2. "Oreno Genuine Olive Oil Castile"—contains 90 per cent. olive oil and 10 per cent. cocoanut oil.

3. "Baby Bath Castile"—having on each cake the phrase, "Olive Oil Soap," and on the box end, "Made with pure olive oil." The composition of this soap is 55 per cent. tallow, 10 per cent. cocoanut oil, and 35 per cent. olive oil. Since 1926, there is printed in small type on each cake the words, "Contains olive oil, cocoanut oil, and refined tallow."

4. "Olive Oil Castile"—with those words stamped on the soap, and in the catalog the statement, "large white cakes of milled olive oil soap." Its fatty content is 80 per cent. tallow, 10 per cent. cocoanut oil, and 10 per cent. olive oil.

5. "Nursery Olive Oil Castile"—fatty content, 90 per cent. olive oil, 10 per cent. cocoanut oil.

6. "Field's Olive Oil Castile"—made partly of olive oil and partly of other oils or fats, percentages not disclosed.

7. "Glendora Castile Soap"—having stamped on the bars, "Glendora 90% Olive Oil Soap." It has 90 per cent. olive oil and 10 per cent. other oils.

8. "Harmony Olive Oil Castile"—having fatty content of 60 per cent. tallow, 10 per cent. cocoanut oil, and 30 per cent. olive oil.

10. "Washrag Castile"—having on the labels the