**HOFELLER v. FEDERAL TRADE COM-
MISSION.**

**No. 5547.**

Circuit Court of Appeals, Seventh Circuit.
March 25, 1936.

William Friedman and Lloyd C. Whit-
man, both of Chicago, Ill., for petitioner.

W. T. Kelley, Chief Counsel, Federal
Trade Commission, Martin A. Morrison,
Asst. Chief Counsel, and Henry C. Lank
and James W. Nichol, Sp. Attys., all of
Washington, D. C., for respondents.

Before EVANS and SPARKS, Circuit
Judges, and BRIGGLE, District Judge.

This appeal is from an order of the
Federal Trade Commission directing peti-
tioner to cease and desist unfair trade
practices, viz., the selling in interstate
commerce to concessionaires, of candy so
packed as to be a lottery or gift enter-
prise. Because of the importance of the
findings of the Federal Trade Commission,
we have set forth the findings of said
commission, deleting the immaterial por-
tions.*

* Findings as to the Facts.

"* * * Hofeller, is an individual do-
ing business as Bob Hofeller Candy Com-
pany * * * in * * * Chicago
* * *. He * * * has been, engaged
in the sale and distribution of packaged
candy to concessionaires * * * bur-
lesque theatres, traveling shows, tent
shows, medicine shows, circuses and
carnivals. Such purchasers are locat-
ed in the various states * * * and
respondent causes said candy packages
* * * to be shipped * * * to the
purchaser * * * in (other) states
* * * respondent has been engaged in
interstate commerce and is * * * in
*active and substantial competition with
others* * * * engaged in the sale
* * * in interstate commerce, of candy
* * *.

"* * * Respondent does not manu-
facture the candy * * * but buys cer-
tain kind of caramel * * * and choco-
late covered cream candy * * *. He
places this candy in boxes bearing various
brand names, together with prizes * * *
of * * * merchandise or coupons
* * * (for) merchandise.

"These assortments vary according to
* * * direction of * * * customers,
but *they all make use of the same chance
feature*, and a description of one * * *
assortment is descriptive of the principle
involved in all. One such assortment
* * * (of) respondent * * * has the
brand name 'Oriental Love Drops.' This
assortment consists of a number of boxes,
each containing * * * five pieces of
caramel candy and another article of mer-
chandise as a prize. A list of prizes in

648

EVANS, Circuit Judge.

Briefly stated the facts are:

Petitioner sells candy in packages which retail for five to twenty-five cents and contain various prizes ranging in value from one cent to three dollars. The consumer in purchasing a package does not know which prize he will receive nor its value. The packages are generally sold in burlesque theatres, at carnivals, and like places, where "straight" candy is not generally sold, but the Commission found that the potential competition of "straight" candy was eliminated by the sale of this prize candy. It also held that the sale of prize candy injuriously affected the business of the straight candy dealers and constituted unfair competition, and violated section 5 of the Federal Trade Commission Act (15 U.S.C.A. § 45).

Petitioner argues that (1) the complaint is insufficient to show unfair methods of competition upon which a valid cease and desist order might be predicated, (2) there was no tendency to suppress substantial competition, exploit or deceive the public (most all of the consumers not being children), and (3) the Federal Trade Commission Act is unconstitutional if it be construed to cover practices not deemed unfair at the time of its adoption.

The instant case is controlled by Federal Trade Commission v. R. F. Keppel & Bro., 291 U.S. 304, 54 S.Ct. 423, 78 L.Ed. 814. Petitioner agrees that his appeal turns upon the applicability or non-applicability of the Keppel Case. He differentiates the Keppel Case on the ground that sales to children were there the determining factor, but were here absent. It,

---

said boxes includes: stick-pins, paper watches, transfer pictures, snap games, moving picture books, water flowers, eyeglasses, tops, strip pictures, lamps, wall decorations, blankets, stockings, bed spreads and pillows. * * * (the prizes) are concealed in said boxes and the nature of the prize * * * can not be ascertained until the box has been purchased and opened. The retail value of the prizes ranges from 1¢ to $3.00.

"* * * The articles of prize merchandise are thus distributed wholly by lot or chance. * * *

"* * * The packages of candy containing * * * prize merchandise are * * * variously described in the candy trade as: 'Prize packages,' * * *. Candy sold without any prize or without any lot or chance feature is referred to * * * as 'Straight' Candy.

"* * * The majority of the packages of candy * * * retail at 10¢ each, * * * a few * * * at 5¢, a few at 16¢ and a few at 25¢. The candy contained in said packages is not the equivalent in value of 'straight' candy sold at corresponding prices.

"* * * Numerous concessionaires * * * purchase the assortments * * * from respondent or * * * from others distributing similar types * * * and such concessionaires * * * offer the same for resale to * * * patrons of such * * * places of amusement * * *.

"* * * The packages are * * * packed in such manner that they can be offered for sale by respondent's customers to the consuming public * * * without alteration. * * * The testimony clearly indicates that the packages * * * can not be resold to the public by respond-

ent's customers, *except as a lottery or gaming device * * *.*

"* * * (Respondent) packs and assembles such candy in the way and manner described so that it shall be resold to the public by lot or chance.

"* * * Respondent's merchandise is sold as 'Prize Candies' in burlesque theatres, traveling shows, tent shows, medicine shows, circuses and carnivals. * * * (where) * * * with the exception of the burlesque theatres, *no other candy is ordinarily offered for sale.* In burlesque theatres some 'straight' candies are occasionally offered for sale and sold. The evidence discloses and the Commission finds that in theatres other than burlesque theatres candy bars and small packages of candy are quite often offered for sale and sold. Candy manufacturers and candy jobbers testified and the Commission finds that, *if this 'prize' candy was not offered for sale, 'straight' candy in bars or small packages could be sold in substantial quantities in burlesque theatres, traveling shows,* etc. * * * and carnivals, *the sale of said 'novelty package' candy prevents the sale of 'straight' candy and thus eliminates competition of manufacturers and jobbers selling such 'straight' candy.* The Commission finds that such manufacturers and *jobbers of 'straight' candy are potential competitors of the respondent insofar as the sale of the 'straight' candy in the aforementioned places of amusement * * *.*

"* * * The sale and distribution * * * by the sales plan described herein is the sale * * * of said packages by lot or chance and constitutes a lottery or gaming device.

"* * * Competitors and potential competitors of respondent * * * testi-

too, was an unfair competition case involving the sale of prize candy, the sale being most generally to children.

This court followed the Keppel Case, in a recent opinion, Walter H. Johnson Candy Co. v. Federal Trade Commission, 78 F.(2d) 717, where we upheld a cease and desist order dealing with the sale of a prize lottery scheme in connection with the sale of candy, mostly to children.

It cannot be denied that the persuasive argument in the Keppel Case was based on the fact that the consumers of the candy were, in the main, children. We are not satisfied, however, that the conclusion there reached is not here applicable. It will be noted that the Supreme Court emphasized the factor of lottery and chance in determining what constituted an unfair method of competition, and it spoke in general terms, at times without limitation to instances where the consumers were children. The practice there disclosed was deemed offensive to some manufacturers who refrained from adopting it and therefore suffered loss. In the Keppel Case there are many facts indicative of unfair trade methods there pointed out by the court which are present in the instant case. Among such similarities are: Inferior candy sold in the prize packages; a relatively negligible amount of the candy was given in return for the price; substantial diversion of trade from actual or potential competitors; sale of the candy with the lottery feature in violation of local law; and competing manufacturers damaged by refraining from such practices.

█ It is quite impossible to escape the conclusion that where a competitive method employs a device whereby the amount of the return is made to depend upon chance, such method is condemned as being contrary to public policy.

---

fied and the Commission finds as a fact that many competitors and potential competitors regard such method of sale and distribution as morally bad and encouraging gambling, and particularly where these packages are offered to audiences made up in part of children; as injurious to the candy industry, because it results in the merchandising of a chance or lottery instead of candy; and as providing the vendors thereof with a means of violating the laws of the several states. Because of these reasons, some competitors and potential competitors of respondent refuse to sell candy so packed and assembled that it can be resold to the public by lot or chance. Other competitors are opposed to such method of sale for the reasons just above stated and testified, and the Commission finds as a fact, that they are nevertheless compelled to adopt such methods in order to meet the competition of respondent and others indulging in like methods, in order to prevent the loss of their business or a substantial part thereof. The competitors and potential competitors of respondent who refuse to sell their merchandise by such methods are thereby put to a disadvantage in competing. Certain concessionaires, operators, * * * who find that they can dispose of more candy by using the method of sale as described, buy respondent's products and the products of others employing the same methods of sale and thereby trade is diverted to respondent and others using similar methods from respondent's competitors and potential competitors. Said competitors and potential competitors can compete on even terms only by giving the same or similar devices to their customers. This they are unwilling to do, and their sales of 'straight goods' candy is injuriously affected.

"The use of the method by respondent as described herein in the sale and distribution of his candy is prejudicial and injurious to the public and to respondent's competitors and potential competitors, and has resulted in the diversion of trade to respondent from his said competitors and potential competitors, and thus is a restraint upon, and a detriment to, the freedom of fair and legitimate competition in the candy industry.

"* * * The sale of 'straight goods' candy has been injuriously affected by the sale of 'novelty prize' candy, and this effect is principally due to the gambling or lottery feature indicated with the 'novelty prize' candy.

"* * * Respondent began the sale * * * of the (prize) assortments * * * in 1932, and has continuously * * * (sold them).

"* * * The exact amount of respondent's annual volume of business is not shown, but the respondent testified, and the Commission finds, that the *volume of his business involving the sale and distribution of candy by lot or chance is substantial.*

"* * * The sale and distribution of candy by lot or chance is against the public policy of the United States and of many of the states thereof, and some of the said states have laws making the operation of lotteries and gambling devices penal offences."

■ Two matters in this field of law are well settled: (a) What constitutes unfair methods of competition is a question of law for the court. Federal Trade Commission v. Balme (C.C.A.) 23 F.(2d) 615; Federal Trade Commission v. Raladam Co., 283 U.S. 643, 51 S.Ct. 587, 75 L.Ed. 1324, 79 A.L.R. 1191; James S. Kirk & Co. v. Federal Trade Commission (C.C.A.) 59 F.(2d) 179; Federal Trade Commission v. Gratz, 253 U.S. 421, 40 S.Ct. 572, 64 L.Ed. 993. (b) The findings of the Federal Trade Commission are to be accepted if supported by evidence. Armand Co. v. Federal Trade Commission (C.C.A.) 78 F. (2d) 707; E. Griffiths Hughes, Inc., v. Federal Trade Commission (C.C.A.) 77 F. (2d) 886; Federal Trade Commission v. Curtis Pub. Co., 260 U.S. 568, 43 S.Ct. 210, 67 L.Ed. 408. The statute provides: " * * * The findings of the commission as to facts, if supported by testimony, shall be conclusive." (15 U.S.C.A. § 45).

■ The issue is therefore narrowed to whether there was evidence to support the findings of the Commission and, if so, whether the facts found were such as to fall within the purview of the legal conception of "unfair methods of competition." As the Supreme Court has interpreted that phrase, the dominant factor seems to be the element of competition, actual or potential, and the specificity and substantiality of the effect of such unfair methods upon such competition.

■ Our study of the record has caused us to reach this conclusion. Although we do not find the evidence overwhelmingly establishes either the presence of substantial existing competition, or of potential competition between the sale of straight candy and the novelty candy here under scrutiny, there is sufficient evidence to sustain the findings of the Commission. The testimony tended to disclose that in the field of burlesque theatres, free open air shows, carnivals, show boats, and the like, the sale of prize or novelty candies constituted a very substantial, if not a major, part of the receipts from candy sales and that little other candy was sold in such places, except bar candies. There was testimony which tended to show that the distributors of straight candy were deprived of possible business. They either refrained from entering that sort of business because of moral compunctions, or they were unable to compete with the prize candy business

because of the appeal of the lottery features. It was also shown that the candy in the prize package was much inferior in quality to straight candy; that the quantity given was negligible in view of price charged; and that the prizes often varied greatly in value. The profit on these packages exceeds 50%.

We are of the opinion that the present investigation was begun in the interest of the public for the protection, encouragement, and maintenance of competition and for the elimination of unfair trade methods involving the use of lottery and methods generally held by the community to be contrary to public policy. There was evidence to the effect that 60% to 70% of the receipts from the free shows was from the sale of this novelty candy; 35% to 50% of show boat receipts resulted therefrom; and 30% to 35% of tent show receipts was from novelty packages. 95% of petitioner's business was in the sale of prize packages. Although complete evidence was lacking, it was sufficient to show that the prize candy industry is a substantial industry.

The order is affirmed.