**WOLF v. FEDERAL TRADE COMMISSION.**

No. 7931.

Circuit Court of Appeals, Seventh Circuit.

May 19, 1943.

Arthur D. Herrick, of New York City, for petitioner.

Jos. J. Smith, Jr., W. T. Kelley, Chief Counsel, and Donovan R. Divet, Sp. Atty., Attys. for Federal Trade Commission, all of Washington, D. C., for respondent.

Before SPARKS and KERNER, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

Petitioner seeks review of an order of the Federal Trade Commission directing him to cease and desist from using lottery methods and devices in the interstate sale of merchandise. Certain other practices were involved in the order, but petitioner states that these have been discontinued and he does not question the order as to them. He states that the sole issue presented by his petition for review is whether his method of conducting business con-stitutes the use of lottery methods and devices. The original complaint was directed to a group of four persons, including petitioner Wolf, doing business as De Luxe Products Company and Delco Novelty Company. Before hearing, three of the respondents had sold their interests to Wolf and one Schwartz, who was not a party to the proceeding, hence we refer throughout our opinion to only the one party, Wolf, as petitioner.

The Commission in its findings of facts describes the offending mode of distribution as follows: Petitioner obtained distributors for his merchandise through answers to magazine advertisements offering to send three initialed handkerchiefs for six cents, or a four-piece beautifying kit for ten cents, to pay postage. To the persons who answered these advertisements, he then sent catalogues and circulars describing the articles of merchandise sold by him, and the method to be used in their sale. The catalogues contained pictures and descriptions of various pieces of merchandise offered as premiums, rewards or compensation to the distributor for his services in selling twenty articles of merchandise, some of which were also illustrated in the catalogue. This catalogue also contained a list of the twenty articles to be offered for sale, with the price of each article, and a blank space opposite each article for inserting the name of the purchaser. At the right of this list was pasted a device commonly known as a "pull card," containing twenty tabs, on the under side of each of which was concealed the name of one of the twenty articles for sale, and the price thereof, neither of which was revealed until after the tab was separated from the card. Exhibits show that these tabs carried girls' names, and the caption above them directed the purchaser to "Pick your favorite four leaf clover girl."

The mode of procedure was for the purchaser to detach one of the tabs, thereby ascertaining the article he was to purchase and the price he was to pay for it. In one assortment, the prices varied from seven cents for a chromium plated tray to thirty-five cents for a box of face powder. When the purchaser had paid the amount called for by his tab, his name was written in the blank provided. When the distributor had sold all the articles and collected the price therefor he remitted the amount to the petitioner, receiving from

him the merchandise which he was to deliver to the purchasers, along with the article chosen by himself as his premium or reward for his services. He might, instead of selecting a merchandise premium, elect to take his compensation in cash, and if so, retain 35% of the amount of his sales.

Immediately above the pull tab device the following appeared, in small print, as found by the Commission:

"Notice to Purchasers: On the back of each slip is printed the price of an article. If after deliberation you decide that you want to buy the article, pay the holder of this book the price shown on the slip. If you do not want the article you need not buy it."

The Commission found that distributors sometimes called attention of their prospective customers to this "notice" and at other times did not. The Commission further found that the successful operation of the sales plan was dependent upon the ability of the distributor to sell all the twenty articles listed, so as to provide for remittance of the required amount to petitioner in order to obtain the merchandise purchased. "The operation of the plan or method strictly in accordance with the 'notice' would not net the distributor a return sufficient to warrant completion of the plan or method and would thereby render it inoperative. No instructions are contained in any of the catalogues, circulars or other literature distributed by the respondents as to what should be done in the event all the articles are not sold, or if a person pulling a tab fails or refuses to complete the purchase; nor is any provision made as to the compensation to be received by the distributor in such cases. On the contrary, as shown by all of the respondents' literature, it is contemplated that all of the listed merchandise must be sold."

The Commission concluded that the "notice" was a subterfuge, intended to avoid the consequences incident to the operation of a game of chance, gift enterprise or lottery scheme. It also found that some of the merchandise had greater value and ordinarily sold at higher retail prices than the prices listed, thereby inducing purchasers to pull the tabs in the hope that they would receive articles of greater value than the prices designated to be paid for them. Whether a purchaser received one of these, or which of the twenty he might receive and the price he was to pay were determined wholly by lot or chance. The Commission therefore found that petitioner had placed in the hands of others, devices to be used in the sale and distribution of their merchandise by means of which a game of chance, gift enterprise or lottery scheme might be used, and by the use of such devices, the merchandise was sold and distributed to the ultimate consumer wholly by lot or chance, contrary to the established public policy of the United States. It further found that many persons selling and distributing merchandise in competition with petitioner were unwilling to adopt and use the sales plan used by petitioner or any method involving a game of chance, gift enterprise or lottery, or any method contrary to public policy. Hence it concluded that petitioner's acts and practices were all to the prejudice and injury of the public and petitioner's competitors, and contrary to the established public policy of the United States, and constituted unfair methods of competition and unfair and deceptive acts and practices in commerce, within the intent and meaning of the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq.

Petitioner earnestly contends that his method of conducting business does not involve a lottery, urging that the three essential elements of lottery, namely, consideration, chance, and prize, are not present. He, of course, urges that his notice to purchasers that they need not buy the article specified in the slip removes all element of consideration and chance, since the purchaser is entitled to reject his purchase after he ascertains what it is and the amount to be paid. However, we are convinced that there was ample evidence to support the finding of the Commission that this notice was a mere subterfuge. Of course the purchaser would not be *bound* to buy the article covered by the tab he pulled. This is no more than a recognition of the common law rule that a gambling transaction is unenforcible, and "only the loser has recourse to the courts." Minter v. Federal Trade Comm., 3 Cir., 102 F.2d 69, 73. And we think there can be no serious doubt that a method of distribution which contemplates the offering to the purchaser of an opportunity to pull a chance to see which article of a list of twenty he may buy constitutes a game of chance, even though each purchaser does receive an article of value for his

purchase. Keller v. Federal Trade Comm., 7 Cir., 132 F.2d 59.

■ Petitioner complains of the effort of the Commission to find a prize in his method of distribution in the variation in values represented by the different articles offered for sale under the scheme. We think we might go even further and find an element of prize in whether or not the purchaser drew a chance to buy an article that would be of any value to himself. To illustrate, a person needing razor blades might well consider himself a prize winner if he drew a chance to buy a package of them instead of a bottle of perfume which might be a total loss to him. And even though petitioner does point to his notice to show that the purchaser would have no obligation to buy the bottle of perfume, we find evidence to support the finding of the Commission that that notice was a subterfuge, hence cannot aid petitioner. Although there was evidence of some sales which might be called "straight sales," on a straight 35% cash commission basis, we think the record supports the finding of the Commission that the method of sale or distribution involved a game of chance, gift enterprise or lottery scheme.

■ Petitioner asserts that there is no showing that the proceeding is in the public interest and denies that it is contrary to the public policy or criminal statutes. We agree with the Commission that a sales plan involving the element of chance is contrary to the public interest, regardless of whether or not it contravenes any criminal statutes. Certain cases relied upon by petitioner to establish absence of a lottery scheme under criminal statutes are not applicable to this proceeding. It is true that there was no finding that there was fraud or deception practiced here (apart from certain practices heretofore referred to as to the order relating to which petitioner makes no complaint). The statute does not confine jurisdiction of the Commission to those acts and practices involving fraud and deception, but empowers it to proceed whenever it has reason to believe that any person has been or is using an unfair method of competition *or* unfair *or* deceptive act or practice in commerce, provided that it appear to it that a proceeding by it in respect thereto would be in the interest of the public.

■ We are convinced that the use of a game of chance for the distribution of merchandise is an unfair act or practice in commerce. Keller v. Federal Trade Comm., *supra.* Petitioner *complains that* there was no proof of injury to competition within the contemplation of the Act, citing International Shoe Co. v. Federal Trade Comm., 280 U.S. 291, 50 S.Ct. 89, 74 L.Ed. 431, and Federal Trade Comm. v. Raladam Co., 283 U.S. 643, 648, 51 S.Ct. 587, 75 L.Ed. 1324, 79 A.L.R. 1191. However, since those cases were decided, the Act has been amended (in 1938) to broaden the scope of the jurisdiction of the Commission to enable it to proceed against any person using an unfair or deceptive act or practice in commerce as well as an unfair method of competition, provided it appears to the Commission that such proceeding would be in the public interest. 15 U.S.C.A. § 45. Hence it is no longer necessary to show competition, if there is an act or practice in commerce, inimical to the public interest. Scientific Mfg. Co. v. Federal Trade Comm., 3 Cir., 124 F.2d 640; Pep Boys, etc., v. Federal Trade Comm., 3 Cir., 122 F.2d 158. See also Federal Trade Comm. v. Raladam Co., 316 U.S. 149, 62 S.Ct. 966, 86 L.Ed. 1336. We think the practice here employed is contrary to the public interest, and that a proceeding to prevent its further use is in the public interest.

■ Although petitioner stated in his brief that the sole issue presented for review was whether his method of conducting business constituted the use of lottery methods and devices, he also raised three further questions, contending that the Commission erred in failing to receive in evidence certain letters and cards offered by petitioner; that the order was invalid and unenforcible for indefiniteness and remoteness; and that the order was void for misnomer of parties. As to the refusal to admit in evidence letters, offered to prove the satisfaction of petitioner's customers, we find no error in the action of the Examiner in sustaining the objection of the Commission to their introduction.

■■ The contention as to "misnomer of parties" relates to the fact that prior to hearing on the complaint, three respondents had sold their interests in the partnership to petitioner and one Schwartz, as shown by petitioner very early in the hearing. The Commission admits overlooking this fact but contends that petitioner's failure to raise the question until his petition for review prevents him from relying

upon it at this time. The order was directed to the four respondents originally named, as individuals, doing business as the DeLuxe Company, or the Delco Company, and their respective agents, representatives and employees. We think it cannot be contended that Schwartz was an indispensable party. Objection to nonjoinder of parties is considered waived unless it is timely raised, and the nonjoinder of parties who are not indispensable in no way affects jurisdiction. Metcalf v. Williams, 104 U.S. 93, 26 L.Ed. 665; 39 Am.Jur. on Parties, §§ 5, 25, 35, 110 and 114; Annotation 1 A.L.R. 363.

We find no merit in petitioner's contention that the order is invalid for indefiniteness.

The order of the Commission is affirmed, and petitioner is hereby ordered to comply with it.