242 F.2d 530
 J. C. MARTIN CORP., a corporation, and Jack Kaslow and
Seymour Orenstein, Individually and as Officers of J. C.
Martin Corp., and Jack Kaslow, Trading as K. W. Sales
Company, and Seymour Orenstein, Trading as L & S Sales
Company, Petitioners,
v.
FEDERAL TRADE COMMISSION, Respondent.
 No. 11859.
 United States Court of Appeals Seventh Circuit.
 April 3, 1957.
 
 Edward L. Smith, Washington, D.C., for petitioner.
 Robert B. Dawkins, Asst. General Counsel, John W. Carter, Jr., Attorney, Federal Trade Commission, Washington, D.C., Earl W. Kintner, General Counsel, Frank M. Whiting, Washington, D.C., Attorneys for Federal Trade Commission, for respondent.
 Before LINDLEY, SWAIM and SCHNACKENBERG, Circuit Judges.
 SWAIM, Circuit Judge.
 
 
 1
 This matter comes here on a petition to review and set aside an order to cease and desist issued by the Federal Trade Commission at the conclusion of an administrative proceeding in which petitioners were charged with having engaged in unfair and deceptive acts and practices in commerce by the sale and distribution of merchandise to the public by means of a game of chance, lottery or gift enterprise in violation of Section 5 of the Federal Trade Commission Act, 52 Stat. 111, 15 U.S.C.A. 45.
 
 
 2
 Petitioners are engaged in the sale and distribution of numerous and varied articles of merchandise including, among others, jewelry, silverware, kitchen utensils and toiletries. Practically all of petitioners' sales are made through members of the public acting as distributors or sales agents for petitioners' merchandise. dise. Petitioners obtain these agents or distributors by sending catalogues to persons whose names and addresses are obtained from mailing lists. The catalogues or sales circulars contain pictures and descriptions of various articles of merchandise offered as premiums or compensation to the distributor for his services in selling forty assorted articles of merchandise. The catalogue contains a list of forty articles of merchandise offered for sale with descriptive details for each item, including the name and price. There is a blank space opposite the name of each item for inserting the name of the purchaser. To the right of the articles listed for sale on the sales sheet there are forty perforated tabs. Even tab conceals the name and price of an article of merchandise corresponding to the name and price of an article in the list of merchandise offered for sale. Immediately above the block of pull tabs the following notice appears:
 
 
 3
 'This is a sales sheet. It is not a punchboard or a gambling device. Do not construe or accept for use as a gambling device.
 
 
 4
 'Here's how it works. You may purchase from the list shown on the left where the merchandise is described or you may pull any one of the slips below on the back of which is printed the article and price. If not satisfied with the item you picked you are not obliged to buy it.'
 
 
 5
 As provided by the notice, a prospective purchaser has the option of purchasing directly from the descriptive list of merchandise or of pulling a tab to ascertain his purchase and the price to be paid. There is no price differential in regard to a particular article depending on whether a 'straight sale' or a 'pull tab sale' takes place. A purchaser may buy as many of any particular article as he wishes either outright or by means of the tabs. Whether or not an individual elects to purchase the article identified by a tab he has pulled, he does not pay anything for the privilege of pulling the tab. After a sale has been consummated, the name of the purchaser is written in the blank space opposite the name of the article purchased.
 
 
 6
 When the person operating the catalogue has sold all of the articles and remitted the purchase price of the articles to the petitioners, petitioners ship to this person the merchandise so sold together with a premium as compensation for his services in operating the catalogue or sales circular. The distributor then delivers this merchandise to the respective purchasers whose names appear on the list which was filled out at the time the purchases were made.
 
 
 7
 If the complete assortment is disposed of the distributor would collect $29.99 to remit to the petitioners. The distributor may elect to retain a specified percentage of this amount in lieu of the premium. In the event the distributor does not succeed in selling the complete assortment, he is not entitled to a premium but receives a cash commission on the articles sold. In the event that the distributor's sales exceed the amount represented by the complete assortment, he receives in addition to the regular premium a cash commission on the excess. Approximately 70 per cent of petitioners' sales made by means of the sales circular, which includes sales made through the use of the pull tabs and sales made outright, have been for the amount represented by a complete assortment of the forty items ($29.99), 20 per cent for amounts exceeding that figure and 10 per cent for amounts below that figure. Petitioners purchase the forty assorted articles as a complete, packaged unit and the success of their method of selling merchandise depends in large part upon the sale of not more nor less than a complete assortment. Otherwise inventories of the individual articles must be maintained and special packaging arrangements must be made when an order is to filled.
 
 
 8
 The Commission found that petitioners' sales methods involve and contemplate the use of lottery devices in the sale and distribution of their merchandise to the public and constitute unfair acts and practices in commerce within the meaning of Section 5 of the Federal Trade Commission Act. Petitioners were ordered to cease and desist from:
 
 
 9
 '1. Supplying to or placing in the hands of others pull cards or any other devices which are designed or intended to be used in the sale and distribution of (their) merchandise to the public by means of a game of chance, gift enterprise, or lottery scheme.
 
 
 10
 '2. Selling or otherwise disposing of any merchandise by means of a game of chance, gift enterprise, or lottery scheme.'
 
 
 11
 A lottery is a scheme for the distribution of prizes by lot or chance; it is a device whereby the amount of return an individual receives for the amount contributed by him is made to depend upon chance. Federal Trade Commission v. R. F. Keppel & Bro., 291 U.S. 304, 54 S.Ct. 423, 78 L.Ed. 814; Keller v. Federal Trade Commission, 7 Cir., 132 F.2d 59; Hofeller v. Federal Trade Commission, 7 Cir., 82 F.2d 647, certiorari denied 299 U.S. 557, 57 S.Ct. 19, 81 L.Ed. 410. The three essential elements of a lottery are: (1) the distribution of prizes (2) according to chance (3) for a consideration. Wolf v. Federal Trade Commission, 7 Cir., 135 F.2d 564. Cf. United States v. Rich, D.C.E.D.Ill., 90 F.Supp. 624.
 
 
 12
 Petitioners contend, inter alia, that the Commission's findings are unsupported by substantial evidence. Petitioners urge that the notice to prospective purchasers that they are not obliged to buy the article identified by a tab eliminates the element of chance and consideration because the purchaser is entitled to reject his purchase after he ascertains what it is and the price to be paid. A similar contention was advanced and rejected by this court in Wolf v. Federal Trade Commission, 7 Cir., 135 F.2d 564, which involved an almost identical sales scheme. Petitioners insist, however, that there was a finding in the Wolf case that the notice was a subterfuge intended to avoid the consequences incident to the operation of a lottery scheme, whereas there is no such finding here. The difficulty with any argument based upon this notice is that it presupposes the very thing we are trying to decide. It the device constitutes a lottery, the law itself declares that a purchaser would not be bound to buy the article indicated by the tab. As was said in the Wolf case, 135 F.2d at page 566: 'This is no more than a recognition of the common law rule that a gambling transaction is unenforcible, and 'only the loser has recourse to the courts." If, on the other hand, the device does not constitute a lottery, then the legal significance of the notice would lie in the province of the law of contracts. Therefore, in regard to the issues presented by this case the notice may properly be disregarded.
 
 
 13
 Petitioners next insist that since an individual has the option to purchase a desired article outright, rather than utilize the tab device, the element of chance is absent. This was also true in the Wolf case although the sales circular there did not contain a notice indicating to the purchaser that he had such an option as is the case here. In any event, we fail to see what comfort petitioners can gain from the fact that a prospective purchaser has this option. If an individual exercises his option to take a chance by pulling a tab can it be said that he has not taken a chance? The objection to the pull tab scheme cannot be removed by offering the individual an unobjectionable alternative.
 
 
 14
 A more serious question is whether the pull tab device standing alone is a lottery scheme. We think it is not. Petitioners' sales method does not incorporate the element of prize which is the motivating factor or the inducement that accounts, in large part, for the success of virtually all forms of gambling-- the opportunity to get something for nothing.
 
 
 15
 In order to constitute a lottery the elements of consideration, chance and prize must be present. The mere presence of chance does not constitute a lottery, nor will chance when coupled with consideration suffice. It is not chance in general with which we are concerned, but the chance of winning a prize, whether that chance be as to any return or merely as to the amount or value of the return. Federal Trade Commission v. R. F. Keppel & Bro., 291 U.S. 304, 54 S.Ct. 423, 78 L.Ed. 814; Keller v. Federal Trade Commission, 7 Cir., 132 F.2d 59; Hofeller v. Federal Trade Commission, 7 Cir., 82 F.2d 647, certiorari denied 299 U.S. 557, 57 S.Ct. 19, 81 L.Ed. 410. The only chance involved in the petitioners' scheme is as to the article to be purchased; there is no chance of prize in the sense of the amount or value of the thing to be received being dependent upon lot or chance. Of course, the mere fact that each purchaser receives a thing of value for his contribution does not negate the existence of a lottery. Keller v. Federal Trade Commission, 7 Cir., 132 F.2d 59. But where, as here, each participant in the scheme will in any event receive the equivalent of the amount contributed by him, and he is not under any hazard of pecuniary loss, nor offered the chance of receiving something of more value than the amount contributed by him, a lottery does not exist.
 
 
 16
 The Commission was of the opinion that prize is present in petitioners' scheme 'because the some forty articles which may be obtained through the pull card vary widely in nature and might well prove to be either valuable or worthless, depending upon the situation of the particular individual receiving them. An article regarded as a 'prize' by one recipient might be wholly without use or value to another. For example, the cigarette lighter offered on one of (petitioners') circulars would be of value to a smoker, while valueless to a nonsmoker. Again, a man receiving the ten packages of razor blades included in the list probably would get his money's worth if he used a safety razor rather than an electric shaver and if the blades would fit his razor; otherwise the blades would be wholly without value to him.'
 
 
 17
 We believe that it would be stretching the term lottery to the breaking point to sustain this finding of prize in petitioners' sales method. Admittedly, the Commission finds support for the validity of this finding in the Wolf case where a similar definition of 'prize' is stated. The Commission in the Wolf case had found that some of the merchandise offered by the petitioner had greater value and ordinarily sold at higher prices than the prices listed, thereby inducing purchasers to pull tabs in the hope that they would receive those articles of greater value than the price designated to be paid for them. The petitioner there also complained of the Commission's effort to find the element of prize in his method of sales and distribution. The court, after noting the finding concerning the relative values of the merchandise, said:
 
 
 18
 'We think we might go even further and find an element of prize in whether or not the purchaser drew a chance to buy an article that would be of any value to himself. To illustrate, a person needing razor blades might well consider himself a prize winner if he drew a chance to buy a package of them instead of a bottle of perfume which might be a total loss to him.' (Emphasis added.) 135 F.2d at page 567.
 
 
 19
 We think the court went too far in defining 'prize'-- a definition which was not necessary to the court's decision. It was alleged in the complaint in the instant case that:
 
 
 20
 'Some of (petitioners') articles of merchandise have purported and represented retail values greater than the prices designated for them, but are distributed to the consumer for the price designated on the tab which he pulls. The prices of others of the articles are higher in proportion than the articles first mentioned. The apparent greater values of some of said articles induces members of the purchasing public to purchase the tabs or chances in the hope that they will receive articles of merchandise of greater value than the designated prices to be paid for same.'
 
 
 21
 But the hearing examiner found that there was no evidence supporting these allegations. Since there is no finding here concerning the relative values of petitioners' merchandise, the Wolf case is not controlling.
 
 
 22
 We are constrained to reject the finding of the Commission that petitioners' sales methods constitute a lottery scheme and, since our disposition of this issue is dispositive of the petition for review, we do not reach petitioners' other contentions.
 
 
 23
 The petition for review is allowed and the Federal Trade Commission's order to cease and desist, entered in this matter on June 29, 1956, is vacated and set aside.